# NO. 15-88

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MAZHAR SALEEM, Individually and on behalf of all others similarly situated,
JAGJIT SINGH, Individually and on behalf of all others similarly situated,
ANJUM ALI, MALOOK SINGH, CARLOTA BRIONES, JAIRO BAUTISTA,
*(For Continuation of Caption See Reverse Side of Cover)*

*Plaintiff-Appellants*,

v.

CORPORATE TRANSPORTATION GROUP, LTD. et al.,
*Defendant-Appellees*.

On appeal from an interlocutory order of the United States District Court
for the Southern District of New York, No. 12-CV-8450 (JMF)

## BRIEF *AMICUS CURIAE* by
## THE NATIONAL EMPLOYMENT LAW PROJECT, NATIONAL
## EMPLOYMENT LAWYERS' ASSOCIATION, LEGAL AID SOCIETY OF
## NEW YORK, THE URBAN JUSTICE CENTER and
## MAKE THE ROAD NEW YORK
## In Support of Reversal

Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Catherine K. Ruckelshaus
National Employment Law Project
75 Maiden Ln., Suite 601 233
New York, NY 10038
(202) 285-3025

Attorneys for *Amici Curiae*

_____

JOSE CABRERA, MARLENE PINEDO, MIRIAM SOLORZANO, MOHAMMAD MIAN, MOHAMMAD SIDDIQUI, S. PEDRO DUMAN, RAJAN KAPOOR, WILMAN MARTINEZ, JOSE SOLORZANO, LUIS A. PEREZ, RANJIT S. BHULLAR, LUIS M. SANCHEZ, ANWAR BHATTI, AVNEET KOURA, MAHER MAQSOOD, ATIF RAZAQ, BHAVESH SHAH, KHUSHWANT SINGH, JAMSHED CHOUDHRY, AZIZ URREHMAN, HASAN KHALBASH, PETER PANZICA, ROBINSON MATA, HILARIO A. SANCHEZ, MANSOR AHMED RANA, BAUDWIN KOURI, ALEXIS S. GACIA-ALBERTO, MUHAMMAD I. CHOUDHRY, ANA M. HERRA, MARISOL ESPINAL, WALID HAMEHO, ALEXANDER SCHWALLB, ERIC JARMON, KEITH DANIEL, RAFAEL RIJO, BABAB HAFEEZ, NORMAN LEVINE, MARIO GUERRERO BATANTA, LIANG HUA MA, WILLIAM MARTINEZ, MOHAMMED A. MUSA, KERRY BOBB, HARJAR RAHMAN, ELPIDIO HELENA, TAMER RASHDAN, MENA MICHAEL, FELIX L. CARABALLO, MARK SHINDER, JOHN M. HIDALGO, ODISHI, INC., KIRK HAYDEN, BARTOLOME ROSARIO, LUIS VASQUEZ, IRFAN SHAFI, MOHAMMAD A. SIDDIQUI, WADE QUASHIE, JIMMY CHEN, JEFF M. GRAVESANDE, EDISSON BARROS, ANDRZEJ OLECHNOWICZ, NICK WIJESINGHE, (Point to Point Casr &Limo Inc.), JACK GOLDEN, FIROZ AHMED, PAUL GLIBAUSKAS, FELIX A. PAULINO, JUAN DE LOS SANTOS, CHOWDHURY ANOWAR, ZONG RONG ZHU, MOHAMMED GAZI ALI, MEI YAO LIU, KATELYN SANTOS, JOSE JAIMES, IBRAHIM DESOOKI, DONGSEDG YOO, JORGE MONAKS, MALIK HUSSAIN, MARCOS MENDEZ, LUIS AUCAPINA, ANDERSON GONZALEZ, TOWON STEWART, FERAS ISSA, LENKIN PANTALEON, EDGAR AUCAPINA, CELSTINO MONTERO, MIKHAIL GERBER, ZYDAN ELNAHAR, DEXTER PUSEY, RANGDEU MULTANI, SATNAM SINGH, XIANGBO LI, HUANG XIONG JIE, RAFAEL A. RISO, ISMAEL MEJIA, KULDIP SINGH, JAN A. KALDA, JEEWAN SINAH, WILSON A. SANTOS, SOHAN SINGH GILL, EUCLIDES PENA, LESTER C. MCDONALD, NORMAN HO, GENNADI PETROVSKI, SATNAM SINGH, ZENXIN WANG, NOBLE YOUNG, FRANCOIS FAN-FAN, MUHAMMAD I. CHOUDHRY, FABIAN MARTINEZ, KONSTANTIN KATZ, RAFAEL OSORIA, NWALA GABRIEL, JOSE M. SOLORZANO, UBALDO DE LOS SANTOS, HARRIKISSOON SEEJATTAN, HARJAR RAHMAN, ADEL ELKAZAZ, PEDRO M. PIASENCIA, KHORSHED ALAM, GARNELL WRIGHTEN, REFAT BHUIYAN, LEO K. STEWART, JEFF M. GRAVESANDE, AHMED NISAR, DANJIT SINGH, HUMAYUN KABIR HUSSAIN, MOHAMMED A. MUSA, HARNEK SINGH WHAR,

SHASHI BHATIA, GOGINDER SINGH, ABDELILAH ELKARHAT, MANINDER SINGH, JO GINDER-SINGH, WILMAN MARTINEZ, HARVINDER KHAMRA, DAVID A. SANCHEZ, SYED FIROZUDDIN, DARIUSZ RYDZEWSKI, YASAR KAHRAMAN, ALI GAZI MOHAMMED, AHMED M. BAKIER, ONRIS DE LA ROSA, HARVINDER S. BHAMRA, IMTIAZ H. QURESHI, DAMIR, AHMED ISMAIL, MUNISH KUMAR, PAUL GLADKEVITCH, TARLOCMAN PAL SINGH, (T.P), ADAM KLAG, AL WONG ZHANG, MUSTAPHA RAHMOUWI, MAHAMMAD ALI SIDDIQUE, SHENG ZHANG LU, GUSTAVO GARCIA, ASHWIN KUMAR, INDERJIT SINGH, MAN CHENG, BALWINDER SINGH, JAWAID KAYANI, SUKHDEV SINGH, FERNANDO AVENDANO, XIONG WEI MI, MOHAMMAD ISLAM, DONGSEOG YOU, TAOJOCHAN SIHGH, RATIC SHIVIONOV, JAGDISH KAL, GABRIEL PIZHA, ANOMWAR I. CHOWDHURY, SAMSON LIAU, NESTOR TERAN, RAJAN DODEJA, SOCRATES GREGORIADIS, SAAD ATTIA, ANTHONY KHAN, RAMON A. ALMONTE, BADLANI PRAKASH, JUAN A. SOTO, MUNJED SHABANEH, JOSE SOLORE, JOSE M.S., ROXANA A. ZETINO, IRFAN SHAFI, ARCELIA BARROS, CHEUNG YEUNG, POINT TO POINT CAR & LIMO, INC., VISHAMBER TUKREL, YING TIAN LEI, MIKHAIL ZEMKO, TAHIR AZIZ, WEN ZHONG LI, KE GENG SHI, N. WESESINGHE, CHRISTINA SANCHEZ MONTERO, KULYK OLEG, ARIEL RESTITUYO, SHUHRAT KHAKBERDIYER, ANGEL M. GAYA, BAYRAM ONBASI, JORGE CONTRERAS, JUAN C. MOGROVEJO, XUN LI FAN, SAMEH S. BASILY, JOSE PINTO, RAMADAN S. KENAWI, DONAVAN JAMES, IBRAHIM ONBASI, AMANDA SINGH, SULEYMAN ISSI, WAZIR MUGHAL, ETIENNE TCHITCHUI, DIOGENES PION, IJAZ MAHBOOB, PEDRO PAZMINO, JING JING WANG, AZID RIAZ, GURMAIL SINGH, ASAND FARA, LAWRENCE CALLISTE, GUO BAO XUAM, JEETU MULTANI, KING WAH YIU, ANJUM ALI, GURMAIL SINGH, AHMED ALJAHMI, BUO XUAN GUO, AMERICAN CAR LIMO TOURS, INC., MOHAMED ABDELAAL, KHEMLHAND KALIKA, MUNISH KUMAR, SHAHIDULLAH DULAL,

*Plaintiff-Appellants,*

– v. –

CORPORATE TRANSPORTATION GROUP, LTD., CORPORATE TRANSPORTATION GROUP INTERNATIONAL, CORPORATE TRANSPORTATION GROUP WORLDWIDE, INC., NYC 2-WAY INTERNATIONAL, LTD., ALLSTATE CAR & LIMOUSINE, INC., ARISTA CAR & LIMOUSINE, LTD., TWR CAR & LIMOUSINE SERVICE, LTD.,

EXCELSIOR CAR AND LIMOUSINE, INC., HYBRID LIMO EXPRESS, INC., EDUARD SLININ, GALINA SLININ,

*Defendants-Appellees.*

_____

Appeal No.: 15-88

### *MAZHAR SALEEM et al., v. CORPORATE TRANSPORTATION GROUP, LTD. et al.,* CERTIFICATE OF INTERESTED PERSONS, CORPORATE DISCLOSURE STATEMENT, AND STATEMENT PURSUANT TO FRAP 29(C)(5)

Pursuant to Federal Rule of Appellate Procedure 29(c), *Amici curiae* hereby provide the following disclosure statements:

**National Employment Law Project** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock.

**National Employment Lawyers Association** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock.

**Legal Aid Society of New York** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock.

**Urban Justice Center** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock.

**Make The Road New York (MRNY)** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10

i

percent or more of this entity's stock.

# **TABLE OF CONTENTS**

INTEREST OF THE *AMICI CURIAE* ...................................................................1

STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT ................6

ARGUMENT ..........................................................................................................8

   I.   Independent Contractor Misclassification By Defendants and Other

       Employers Imposes Significant Societal Costs. .............................................8

   II.   The District Court Lost Sight Of The Ultimate Inquiry Under the FLSA:

       Whether the Workers are in Business for Themselves..................................13

   III.  The District Court Ignored Numerous Genuine Issues of Material Fact With

       Respect to Multiple Factors, All of Which Counsel in Favor of Leaving the

       Fact-Intensive Employment Status Question to a Jury. ...............................17

CONCLUSION .....................................................................................................22

# TABLE OF AUTHORITIES

## Cases

Antenor v. D & S Farms,
  88 F.3d 925 (11th Cir. 1996) ...............................................................16

Bacon v. Eaton Corp.,
  565 F. App'x 437 (6th Cir. 2014) .........................................................20

Bailey v. TitleMax of Georgia, Inc.,
  776 F.3d 797 (11th Cir. 2015) .............................................................15

Barrentine v. Arkansas–Best Freight Sys.,
  450 U.S. 728 (1981) ............................................................................18

Brock v. Superior Care, Inc.,
  840 F.2d 1054 (2d Cir. 1988) ..............................................................16

Community for Creative Non-Violence v. Reid,
  490 U.S. 730 (1989) ............................................................................15

Craig v. FedEx Ground Package Sys., Inc.,
  300 Kan. 788 (2014) ...........................................................................10

Craig v. FedEx Ground Package System, Inc.,
  2012 WL 2862030 (7th Cir. 2012) .........................................................9

Godoy v. Rest. Opportunity Ctr. of New York, Inc.,
  615 F. Supp. 2d 186 (S.D.N.Y. 2009) ..................................................16

Hana Fin., Inc. v. Hana Bank,
  135 S. Ct. 907 (2015).................................................................... 18, 19

Herr v. Heiman,
  75 F.3d 1509 (10th Cir. 1996) .............................................................20

Keller v. Miri Microsystems LLC,
  2015 WL 1344617 (6th Cir. Mar. 26, 2015) ................................. 14, 19

Lilley v. BTM Corp.,
  958 F.2d 746 n. 1 (6th Cir.1992) .........................................................18

Martin v. Tango's Rest., Inc.,
    969 F.2d 1319 (1st Cir. 1992)............................................................10

McGuiggan v. CPC Int'l, Inc.,
    84 F. Supp. 2d 470 (S.D.N.Y. 2000) ..............................................16

Morrison v. Int'l Programs Consortium, Inc.,
    253 F.3d 5 (D.C. Cir. 2001)...........................................................20

Narayan v. EGL, Inc.,
    616 F.3d 895 (9th Cir. 2010) ........................................................18

O'Connor v. Uber Technologies, Inc.,
    2015 WL 1069092 (N.D. Cal. Mar. 11, 2015) .................................21

Saleem v. Corporate Transp. Grp., Ltd.,
    (S.D.N.Y. Sept. 16, 2014)....................................................... 6, 20, 21

Scantland v. Jeffry Knight, Inc.,
    721 F.3d 1308 (11th Cir. 2013) ............................................... 7, 19, 20

Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen,
    835 F.2d 1529 (7th Cir. 1987) ................................................... 15, 18

Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,
    321 U.S. 590 (1944)......................................................................15

Tonak v. Kenwal Steele Corp.,
    2015 WL 1541806 (E.D. Mich. Apr. 7, 2015) .................................15

Tony & Susan Alamo Found. v. Sec'y of Labor,
    471 U.S. 290 (1985).....................................................................15

U.S. v. Rosenwasser,
    323 U.S. 360 (1945)................................................................ 13, 14

United States v. Gaudin,
    515 U.S. 506 (1995).....................................................................19

Usery v. Pilgrim Equip. Co.,
    527 F.2d 1308 (5th Cir. 1976) ....................................................7, 16

Walling v. Portland Terminal Co.,
    330 U.S. 149 (1947).....................................................................15

Werner v. Bell Family Med. Ctr., Inc.,
  529 F. App'x 541 (6th Cir. 2013) .........................................................................20

## Legislative Material

156 Cong. Rec. S7135-01,S7136 (daily ed. Sept. 15, 2010) ....................................10

## Statutes

29  U.S.C. §203 ...........................................................................................................14

29 U.S.C. §§ 201 .......................................................................................................1, 6

29 U.S.C. §202 ...........................................................................................................15

## Rules

Fed. R. App. P. 29 .......................................................................................................1

Local Rule 29.1 ...........................................................................................................1

## Other Authorities

Annual Report: Fraud Deterrence and Detection Activities 20 (2009) ...................12

Lalith de Silva et al.,Independent Contractors: Prevalence and Implications for
  Unemployment Insurance Programs iii (2000) ...............................................9, 11

Linda H. Donahue et al.,The Cost of Worker Misclassification in New York State
  10 (2007) ...........................................................................................................11

New York's Joint Enforcement Task Force February 2011 Report at 2,available
  at:http://www.labor.ny.gov/ui/PDFs/2011%202011%20Misclassification%20Re
  port%20to%20the%20Governor%20(4)%20(2).pdf. ..........................................12

Richard Cordray,Report of the Ohio Attorney General on the Economic Impact of
  Misclassified Workers for State and Local Governments in Ohio (2009) ...........13

Sarah Leberstein, Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries: A Survey of Research (2014), at 4 ...8, 11

Treasury Inspector General for Tax Administration, While Actions Have Been Taken to Address Worker Misclassification, an Agency-Wide Employment Tax Program and Better Data Are Needed, 2009-30-035 (2009)................................11

U.S. General Accounting Office, Employment Arrangements: Improved Outreach Could Help Ensure Proper Worker Classification, GAO-06-656, App. III...................................................8, 9

## INTEREST OF THE *AMICI CURIAE*[1]

*Amici* submit this brief in support of Plaintiffs-Appellants in order to shed light on the statutory language and purpose of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), and to highlight the breadth of the definition of "employ" under the FLSA. In addition, *amici* propose strong public policy reasons that support a broad application of the FLSA, especially in this era of increasing abuse of the "independent contractor" designation. This issue has broad implications for *amici*, millions of workers in a wide-ranging variety of jobs, law-abiding employers, and local and state government finances. Finally, *amici* underscore the fact-intensive nature of the FLSA's employment status test, which

---

[1]     Pursuant to Local Rule 29.1(b) and Fed. R. App. P. 29(c)(5), the amici curiae include the following Statement pursuant to Rule 29(c)(5): **National Employment Law Project** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock. **National Employment Lawyers Association** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock. **Legal Aid Society of New York** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock. **Urban Justice Center** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock.  **Make The Road New York (MRNY)** is a non-profit corporation that offers no stock; there is no parent corporation or publicly owned corporation that owns 10 percent or more of this entity's stock.

1

involves mixed questions of law and fact such that here, the question was not appropriate for resolution in the Defendants' favor on summary judgment.

The National Employment Law Project (NELP) is a non-profit legal organization with 45 years of experience advocating for the employment and labor rights of low-wage and unemployed workers. NELP seeks to ensure that all employees, and especially the most vulnerable ones, receive the full protection of labor standards laws, and that employers are not rewarded for skirting those basic rights. NELP's areas of expertise include the workplace rights of nonstandard workers under state and federal employment and labor laws, with an emphasis on wage and hour rights. NELP has litigated directly and participated as amicus in numerous cases and has provided Congressional testimony addressing the issue of employment and independent contractors under the Fair Labor Standards Act and state labor standards.

The National Employment Lawyers Association (NELA) is the largest professional membership organization in the country comprised of lawyers who represent workers in labor, employment and civil rights disputes. Founded in 1985, NELA advances employee rights and serves lawyers who advocate for equality and justice in the American workplace. NELA and its 69 circuit, state, and local affiliates have a membership of over 4,000 attorneys who are committed to working on behalf of those who have been illegally treated in the workplace.

NELA's members litigate daily in every circuit, affording NELA a unique perspective on how the principles announced by the courts in employment cases actually play out on the ground. NELA strives to protect the rights of its members' clients, and regularly supports precedent-setting litigation affecting the rights of individuals in the workplace.

The Legal Aid Society is the oldest and largest provider of legal assistance to low-income families and individuals in the United States. The Society's Civil Practice operates trial offices in all five boroughs of New York City providing comprehensive legal assistance to low-income clients. The Society's Employment Law Unit represents low-wage workers in employment-related matters including claims for unpaid wages. The Unit conducts litigation, outreach, and advocacy efforts on behalf of clients to assist the most vulnerable workers in New York City, among them, workers who are misclassified as independent contractors. In particular, the Unit has represented many car service drivers who, because of employer misclassification, experience severe wage theft and other forms of exploitation at work.

Founded in 1984, the Urban Justice Center is a New York City-based nonprofit organization that provides legal services, advocacy and outreach to the City's most vulnerable residents on issues relating to homelessness, housing, public benefits, mental health, domestic violence and workers' rights, among

3

others. The Urban Justice Center represents many low income workers who have been misclassified as independent contractors and denied their rights to a minimum wage and overtime wages. The negative effects of misclassification of the workers we represent are evident in our clients' struggles to obtain unemployment insurance when they are dismissed from their job without cause or workers compensation insurance when they are injured on the job. Moreover, the Urban Justice Center currently represents several black car drivers who have also been misclassified as independent contractors and have been denied their rights under the Fair Labor Standards Act and the New York Labor Law such as the Plaintiff-Appellants in this case. Therefore, the outcome of this case and the Second Circuit's decision may affect current and future clients of the Urban Justice Center who rightfully seek to be recognized as employees and provided with the full protections of the Fair Labor Standards Act and New York Labor Law. The proper resolution of this case is therefore a matter of substantial interest to the Urban Justice Center and its clients.

Make the Road New York (MRNY) is a non-profit membership organization with over 17,000 low income members dedicated to promoting equal rights and economic and political opportunity for low-income New Yorkers through community and electoral organizing, leadership development, education, provision of legal services, and strategic policy advocacy. MRNY's Workplace Justice team

4

represents hundreds of low-wage workers each year to recover unpaid wages and benefits they were denied by exploitative employers and seeks to enforce workers' rights under the labor law. MRNY has developed expertise in enforcement mechanisms of wage and hour laws and legislative reform to enhance protection for workers under state law. Unscrupulous employers increasingly misclassify their workers as independent contractors in order to reduce their labor costs and lower payroll taxes and contributions to government underemployment insurance and workers' compensation funds. As a result, workers are denied their most basic rights as employees under the law, including their right to premium pay for overtime for those who work the longest hours, and other protections under core anti-discrimination and health and safety laws. Workers in low-wage industries like janitors, home-care, warehouse and construction workers are particularly vulnerable. MRNY is committed to ensuring that companies are held responsible for their obligations to their worker employees and are not allowed to evade them by deliberately misclassifying them as independent contractors.

## STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

This summary judgment decision concerns "over two hundred FLSA opt-in Plaintiffs," who drove black cars for and were classified as "independent contractors" by the Defendants in New York City and the surrounding areas, see Saleem v. Corporate Transp. Grp., Ltd., at *1, *15 (S.D.N.Y. Sept. 16, 2014), and who seek unpaid overtime payments under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201. Many of these drivers work more than forty hours a week for Defendants but do not receive time-and-a-half for the work they perform as the FLSA requires for employees. There is ample evidence in the record showing that the Plaintiffs meet the broad definition of "employee" under the FLSA as defined in settled Second Circuit law.

Misclassification of workers as independent contractors is a matter of serious public concern as it enables companies like the Defendants to underpay and overwork their workers, lower their labor costs and avoid paying payroll taxes and other insurance premiums, and leaves workers without critical labor protections. The social impact of employers' abuse of the independent contractor designation has caused state and federal governments to lose billions of dollars in unpaid funds. Moreover, the problem of misclassification is compounded when law-abiding employers concoct similar schemes in order to compete. Here, the District Court's decision not only exacerbated this serious problem, but also decided the

fact-intensive claims in favor of the defendants' summary judgment motion in an entirely inappropriate manner and contrary to law.

The District Court's decision lost sight of the ultimate question at the heart of this case: whether the workers "stand as separate economic entities who [are] in business for themselves." Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1313 (11th Cir. 2013) (internal quotation omitted); see also Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1312 (5th Cir. 1976). Instead, the District Court engaged in a mechanical listing of factors without weighing and balancing their importance to the critical question of whether the worker is actually running his or her own business, independent of the employer's. Such an analysis in contrary to Second Circuit law and to numerous decisions of other courts, finding that where the facts point in different directions with respect to multiple factors, the question of employment status under the FLSA is for a jury to decide.

Moreover, the District Court's results-oriented examination of the factors contravenes Congress's intent to define the scope of "employ" in the FLSA broadly. Thus, the District Court had no right to resolve the issue on summary judgement, and a trial was warranted. For all these reasons, the *amici* urge this Court to reverse the District Court's decision, and remand to allow a jury determination as to whether the workers are in fact employees.

7

# ARGUMENT

## I. Independent Contractor Misclassification By Defendants and Other Employers Imposes Significant Societal Costs.

Employer schemes that misclassify workers as independent contractors, such as the one at issue here, are a serious concern in today's economy. Misclassification denies workers the protection of workplace laws, robs the government's unemployment insurance and workers' compensation funds of billions of much-needed dollars, and reduces federal, state, and local tax withholding and revenues. This problem is growing. Between February 1999 and February 2005, the number of workers classified as independent contractors in the United States grew by 25.4 percent.[2] The U.S. Department of Labor's Employment and Training Administration found that the average number of misclassified workers identified per audit more than doubled between 2002 and 2011.[3] Another study commissioned by the U.S. Department of Labor found that

---

[2]   U.S. General Accounting Office, <u>Employment Arrangements: Improved Outreach Could Help Ensure Proper Worker Classification</u>, GAO-06-656, App. III. Tbl.4 (2006) (showing changes in size of contingent workforce), *available at* <u>http://www.gao.gov/assets/260/250806.pdf</u>.

[3]   Sarah Leberstein, <u>Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries: A Survey of Research</u> (2014), at 4, *available at* nelp.org/content/uploads/2015/03/Independent-Contractor-Costs.pdf

up to 30% of audited employers misclassified workers.[4]  As the United States

Government Accountability Office (GAO) has concluded, "employers have

economic incentives to misclassify employees as independent contractors because

employers are not obligated to make certain financial expenditures for independent

contractors that they make for employees, such as paying certain taxes (Social

Security, Medicare, and unemployment taxes), providing workers' compensation

insurance, paying minimum wage and overtime wages, or including independent

contractors in employee benefit plans."[5]

The Seventh Circuit recently recognized that "[t]he number of independent

contractors in this country is growing" because of the "economic incentives for

employers to use independent contractors and [that] there is a potential for abuse in

misclassifying employees as independent contractors." Craig v. FedEx Ground

Package System, Inc., 2012 WL 2862030, *7-8 (7th Cir. 2012) (*per curiam*). The

Court certified questions regarding the application of state law to the FedEx drivers

at issue in that case and the Kansas Supreme Court found that the drivers were in

fact misclassified as independent contractors.  The Kansas Supreme Court noted

---

[4]     Lalith de Silva et al., Independent Contractors: Prevalence and Implications
for Unemployment Insurance Programs iii (2000), *available at*
http://wdr.doleta.gov/owsdrr/00-5/00-5.pdf.

[5]     U.S. General Accounting Office, Employment Arrangements, *supra* note 2,
at 25.

that the company admitted to "carefully structur[ing] its drivers' operating agreements so that it could label the drivers as independent contractors in order to gain a competitive advantage, *i.e.,* to avoid the additional costs associated with employees." Craig v. FedEx Ground Package Sys., Inc., 300 Kan. 788, 791 (2014). Thus, the Court recognized that such schemes are harmful not only to workers and the government, but also to those competing businesses who attempt to play by the rules and comply with the law. See also Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1324 (1st Cir. 1992), as amended (July 31, 1992) (noting that "payment of back wages [under the FLSA], if proved due, is intended to protect complying competitors of the defendants, in addition to making the employee whole"). The same is true in the limousine industry, where many companies classify their drivers as employees and have to pay the associated costs.

Federal and state governments also suffer significant loss of revenues due to independent contractor misclassification, in the form of unpaid and uncollectible income taxes, payroll taxes, and unemployment insurance and workers' compensation premiums. Between 1996 and 2004, $34.7 billion of federal tax revenues went uncollected due to the misclassification of workers."[6] The Internal Revenue Service's (IRS) most recent estimates of misclassification costs are a $54

---

[6]     156 Cong. Rec. S7135-01, S7136 (daily ed. Sept. 15, 2010).

billion underreporting of employment tax, and losses of $15 billion in unpaid FICA taxes and unemployment insurance taxes.[7] Misclassification of this magnitude exacts an enormous toll: researchers found that misclassifying just one percent of workers as independent contractors would cost unemployment insurance trust funds $198 million annually.[8]

State governments also lose hundreds of millions of dollars in unemployment insurance, workers' compensation, and general income tax revenues due to independent contractor misclassification.[9] Here in New York, where many of the black car drivers in this case perform their work, misclassification of workers resulted in more than $175 million of unpaid unemployment taxes per year.[10] Data shows that as much as 10% of the state's private sector workforce across a number of industries may be misclassified as independent contractors. Id. at 5. In 2010 alone, New York State's Joint

---

[7]     Treasury Inspector General for Tax Administration, While Actions Have Been Taken to Address Worker Misclassification, an Agency-Wide Employment Tax Program and Better Data Are Needed, 2009-30-035 (2009), *available at* http://www.treasury.gov/tigta/auditreports/2009reports/200930035fr.pdf.

[8]     De Silva, *supra* note 4, at iv.

[9]     Leberstein, *supra* note 3, at 2-5.

[10]     Linda H. Donahue et al., The Cost of Worker Misclassification in New York State 10 (2007), *available at* http://digitalcommons.ilr.cornell.edu/reports/9/.

Enforcement Task Force on Employee Misclassification (JETF) identified over
18,500 instances of employee misclassification, discovered over $314 million in
unreported wages, assessed over $10.5 million in unemployment taxes, over $2
million in unpaid wages and over $800,000 in workers' compensation fines and
penalties.[11]  Indeed, a growing number of states have called attention to the
increasing problem of independent contractor misclassification by creating
interagency task forces and committees to study the problem. California, for
example, found that 29 percent of audited employers had misclassified workers, a
figure amounting to $137 million in lost income taxes.[12]  A 2009 report by the
Ohio Attorney General found that the state lost between $12 million and $100
million in unemployment payments, between $60 million and $510 million in
workers' compensation premiums, and between $21 million and $248 million in

---

[11] New York's Joint Enforcement Task Force February 2011 Report at 2, *available
at*:http://www.labor.ny.gov/ui/PDFs/2011%202011%20Misclassification%20Repo
rt%20to%20the%20Governor%20(4)%20(2).pdf.

[12]     Tax audits conducted by California's Employment Development Department
(EDD) from 2006 to 2008 identified 39,494 previously unreported employees.
During this 3-year period, EDD recovered $137,563,940 in payroll tax
assessments. See California Employment Development Department, Annual
Report: Fraud Deterrence and Detection Activities 20 (2009), *available at*
http://www.edd.ca.gov/pdf_pub_ctr/report2009.pdf.

12

foregone state income tax revenues.[13]  Permitting such schemes to continue

permits the wage standards floor to drop, and costs the states billions of dollars in

lost payroll and tax revenue.  Thus, the stakes are too high for courts to permit

employers to simply label workers as independent contractors, without a robust

assessment of the economic reality of the facts applied to the law, as the District

Court did here.

## II.     The District Court Lost Sight Of The Ultimate Inquiry Under the FLSA: Whether the Workers are in Business for Themselves.

The Fair Labor Standards Act is a remedial statute, designed to address

worker exploitation and to serve that purpose, Congress broadly defined "employ"

to require most worksites and workers to be covered by the FLSA.  See U.S. v.

Rosenwasser, 323 U.S. 360, 362-63 (1945) ("A broader or more comprehensive

coverage of employees . . . would be difficult to frame").  Thus, the existence of an

employment relationship turns on whether a worker operates an independent

business or is instead performing services that are economically integrated into

another's business.  When viewed through this lens it seems clear that the District

Court should not have determined the issue as a matter of law in this case, given

_____

[13]     Richard Cordray, Report of the Ohio Attorney General on the Economic Impact of Misclassified Workers for State and Local Governments in Ohio (2009), *available at* http://www.faircontracting.org/PDFs/prevailing_wage/Ohio_on_Misclassification.pdf.

13

the numerous facts showing that the Plaintiffs' were not truly running an independent business separate from the Defendants' car service business.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. §203(d), and "employee" as "any individual employed by an employer," 29 U.S.C. 203(e)(1). The FLSA further defines "employ" to "include[ ] to suffer or permit to work." 29 U.S.C. § 203(g). The "suffer or permit" standard does not simply make the scope of employment relationships covered by the FLSA more broad than those covered by the common law control test; the Act's definition of 'employee' is "'the broadest definition that has ever been included in any one act.'" United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945) (quoting the FLSA's principal sponsor, Senator Hugo Black, 81 Cong. Rec. 7657 (1937)); see also Keller v. Miri Microsystems LLC, 2015 WL 1344617, *1 (6th Cir. Mar. 26, 2015) ("The FLSA's definition of 'employee' is strikingly broad and stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles").

Indeed, Congress chose this expansive definition with the specific purpose of including relationships not considered "employment" at common law, which inquired only whether the alleged employer had the "right to control the manner and means by which the product is accomplished" for purposes of tort liability.

14

Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989);

Walling v. Portland Terminal Co., 330 U.S. 149, 152 (1947). Thus, the Supreme

Court "has consistently construed the Act 'liberally to apply to the furthest reaches

consistent with congressional direction,' recognizing that broad coverage is

essential to accomplish the [Act's] goal . . . ." Tony & Susan Alamo Found. v.

Sec'y of Labor, 471 U.S. 290, 296 (1985) (quoting Mitchell v. Lublin, McGaughy

& Assocs., 358 U.S. 207, 211(1959)) (internal citation omitted); see Tenn. Coal,

Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944); 29 U.S.C.

§202 (congressional policy behind enactment of FLSA was elimination of

substandard working conditions); Bailey v. TitleMax of Georgia, Inc., 776 F.3d

797, 800 (11th Cir. 2015) ("[T]he goal of the FLSA is to counteract the inequality

of bargaining power between employees and employers").

    "The purpose of the Act is to protect employees from low wages and long

hours, and to free commerce from the interferences arising from the production of

goods under conditions that were detrimental to the health and well-being of

workers." Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen, 835 F.2d 1529, 1538

(7th Cir. 1987). Thus, "Congress enacted the FLSA 'to correct labor conditions

detrimental to the maintenance of the minimum standard of living necessary for

health, efficiency, and general well-being of workers.'" Tonak v. Kenwal Steele

Corp., 2015 WL 1541806, *1 (E.D. Mich. Apr. 7, 2015) (quoting Keller, in 2015

15

WL 1344617, *3). With these remedial considerations in mind, courts in this Circuit have recognized that "the ultimate concern of a court's economic reality inquiry is the economic dependence of the putative employee on the putative employer; that is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." Godoy v. Rest. Opportunity Ctr. of New York, Inc., 615 F. Supp. 2d 186, 193 (S.D.N.Y. 2009) (internal quotation omitted); see also McGuiggan v. CPC Int'l, Inc., 84 F. Supp. 2d 470, 479-80 (S.D.N.Y. 2000) (noting that "[i]f the Plaintiffs were in business for themselves, they were not employees; If they were economically dependent on and within the direct control of [defendant], they were employees").

"Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided." Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988); see also Antenor v. D & S Farms, 88 F.3d 925, 933 (11th Cir. 1996) (urging that employment status "is not determined by a mathematical formula" and that the factors should be viewed "qualitatively to assess the evidence of economic dependence"); Usery, 527 F.2d at 1311 ("No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries

16

produce a resolution which submerges consideration of the dominant factor–

economic dependence").

Here, the District Court plainly lost sight of the central question: whether the

drivers can run a business separate and independent from Defendants' business

operation.  In applying each factor, the Court must consider how and whether that

factor assists it in determining that central question, as described below in Section

IV.  It is clear that the drivers are not in business for themselves, where they

perform the central function of Defendants' business by transporting Defendants'

customers, they are subject to Defendants' rules and discipline, they are limited in

their ability to work for other employers, and they are not able to negotiate their

own rates of pay.  See Dkt. 39 (Plaintiff-Appellants' Br.) at 9-25.

## III. The District Court Ignored Numerous Genuine Issues of Material Fact With Respect to Multiple Factors, All of Which Counsel in Favor of Leaving the Fact-Intensive Employment Status Question to a Jury.

Numerous courts to consider the employee-status question under the FLSA's

economic realities test have found that a Court abuses its discretion by deciding

that workers are independent contractors and not employees as a matter of law,

where the facts point in both directions.  Indeed, there is increasing

acknowledgement among the federal courts that such fact-intensive decisions are

more appropriately decided by a jury and that the court should not decide

employment status as a matter of law in the face of conflicting evidence because

17

"[a] fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part." Sec'y of Labor v. Lauritzen, 835 F.2d 1529, 1542 (7th Cir.1987) (Easterbrook, J., concurring). Thus courts have increasingly recognized that while "the 'ultimate conclusion as to whether the workers are employees or independent contractors' is one of law, . . . drawing of inferences from subordinate to 'ultimate' facts is a task for the trier of fact—if, under the governing legal rule, the inferences are subject to legitimate dispute." Narayan v. EGL, Inc., 616 F.3d 895, 901 (9th Cir. 2010) (quoting Lauritzen, 835 F.2d at 1543). This is particularly true here, where the workers have elected to invoke their right to a jury trial. Hana Fin., Inc. v. Hana Bank, 135 S. Ct. 907, 911 (2015) ("[W]hen a jury trial has been requested and when the facts do not warrant entry of summary judgment or judgment as a matter of law, the question … must be decided by a jury").

The Supreme Court has recognized that "FLSA claims typically involve complex mixed questions of fact and law." Barrentine v. Arkansas–Best Freight Sys., 450 U.S. 728, 743 (1981); see also Lilley v. BTM Corp., 958 F.2d 746, 750 n. 1 (6th Cir.1992) ("Whether a FLSA plaintiff is an employee is a mixed question of law and fact"); Lauritzen, 835 F.2d at 1542 (Easterbrook, J., concurring) (noting that "if we are to have multiple factors, we should also have a trial" because "[a]

18

fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part"). Thus, many courts have found such questions appropriate for resolution by a jury. Hana Fin., Inc., 135 S. Ct. at 911 ("[T]he application-of-legal-standard-to-fact sort of question ..., commonly called a 'mixed question of law and fact,' has typically been resolved by juries'") (quoting United States v. Gaudin, 515 U.S. 506, 512 (1995)).

For example, just last month in Keller v. Miri Microsystems LLC, 2015 WL 1344617, *12 (6th Cir. Mar. 26, 2015), the Sixth Circuit reversed a grant of summary judgment to an employer of satellite-internet technicians who had claimed misclassification under the FLSA where the court concluded that "there are many genuine disputes of fact and reasonable inferences from which a jury could find that Keller was an employee." Similarly, in Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013), the Eleventh Circuit reversed a grant of summary judgment to a defendant under the FLSA where a class of cable installers alleged they were misclassified as independent contractors and wrongly denied overtime pay. Applying the FLSA's economic realities test, the Scantland court concluded that "[w]hen all the facts are viewed in the light most favorable to the plaintiffs and all reasonable inferences are drawn in their favor, four of the six factors weigh strongly in favor of employee status [and] [t]he two factors that do

19

not—investment and special skill—weigh only very slightly toward independent contractor status." Id. at 1319; see also Werner v. Bell Family Med. Ctr., Inc., 529 F. App'x 541, 544 (6th Cir. 2013) ("the evidence pertaining to the 'economic reality' factors permitted multiple inferences and was thus an issue for the jury"); Bacon v. Eaton Corp., 565 F. App'x 437, 441 (6th Cir. 2014) (finding genuine issues of material fact as to whether plaintiffs were exempt from FLSA's overtime provisions precluded summary judgment for defendant and remanding for trial). Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 10 (D.C. Cir. 2001) (noting that although "[w]hether an individual is an 'employee' within the meaning of the FLSA is a legal question, . . . any subsidiary factual issues leading to this conclusion are, of course, questions of fact for the jury"); Herr v. Heiman, 75 F.3d 1509, 1513 (10th Cir. 1996) ("Whether an individual is an employee or an independent contractor is generally a question of fact for the jury to decide"). Here, as in Scantland, the Court failed to draw all inferences in favor of the non-moving party as is required at this stage. Despite acknowledging material disputes of fact as to the degree of control exercised by the employer[14] and the relative

---

[14] The court noted that Defendants "engaged in some monitoring and discipline" and imposed a "dress code" but then found that the degree of control favored independent contractor status. Again, the court plainly did not draw all inferences in favor of the workers, as it should have on summary judgment. Saleem, 2014 WL 4626075, *11. Similarly, the District Court noted that drivers

20

economic risk undertaken by the parties,[15] the court did not draw inferences in favor of the drivers but instead found that no reasonable juror could find that these factors weighed in favor of employment status.

Indeed, in a case involving similar facts to those at issue here, a federal court recently denied an alleged employer's motion for summary judgment under California's multi-factor common law employment test, which is much narrower than the FLSA's economic realities test, sweeping in fewer employment relationships. See O'Connor v. Uber Technologies, Inc., 2015 WL 1069092 (N.D. Cal. Mar. 11, 2015). In O'Connor, the court analyzed the employment status of Uber drivers who utilize Uber's software as a kind of dispatch system akin to the one at issue in this case. Id., *4. However, the court noted that (like the drivers here) the O'Connor plaintiffs had their rates of pay determined by Defendant, were subject to Defendant's rules and discipline, and performed services that were an integral part of the Defendant's business. Ultimately, the court concluded "that a hiree's status as either an employee or independent contractor should typically be

---

frequently "work[ed] for other car services" and dismissed the fact that the "the franchise agreements contain a non-compete clause," id. at *10, but this difference creates a genuine dispute of material fact that further underscores the inappropriateness of deciding this question as a matter of law.

[15]     The court noted that "it is not obvious which party undertook more economic risk," but nonetheless appears to have concluded that the opportunity for profit and loss favored the defendant. Saleem, 2014 WL 4626075, *13.

determined by a jury, and not the judge." Id.  The same is true here.  Indeed, decisions like Scantland, Keller, and O'Connor evince a growing recognition among the federal courts that such decisions are for a jury to decide and that a court should not lightly determine that workers are independent contractors and not employees as a matter of law, in the face of conflicting indications.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's grant of summary judgment, and remand for trial to allow the drivers to present their evidence to a jury showing their status as employees.

**Dated:** April 28, 2015               Respectfully submitted,


*  /s/ Shannon Liss-Riordan*
Shannon Liss-Riordan,
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Catherine K. Ruckelshaus
National Employment Law Project
75 Maiden Ln., Suite 601 233
New York, NY 10038
(202) 285-3025

Roberta L. Steele
National Employment Lawyers Association
2201 Broadway, Suite 402
Oakland, CA  94610
(415) 296-7629

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(7)(B), and 29(d),  I hereby certify that this brief contains 4,955 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), as established by the word count of the computer program used for preparation of this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated: April 28, 2015

/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com

*Attorney for Amici*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 11, 2016, true and correct copies of the foregoing Motion for Leave to File an Amicus Brief and accompanying proposed Amicus Brief were filed electronically with the Clerk of Court of the United States Court of Appeals for the Second Circuit and served upon all counsel of record via the Court's CM/ECF system.

Dated: January 11, 2016

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com

*Attorney for Amici*

25