# No. 15-88

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

MAZHAR SALEEM, *Individually and on behalf of all others similarly situated,*
JAGJIT SINGH, *Individually and on behalf of all others similarly situated,*
ANJUM ALI, MALOOK SINGH, CARLOTA BRIONES, JAIRO BAUTISTA,
JOSE CABRERA, MARLENE PINEDO, MIRIAM SOLORZANO,
OHAMMAD MIAN, MOHAMMAD SIDDIQUI, S. PEDRO DUMAN, RAJAN
KAPOOR, WILMAN MARTINEZ, JOSE SOLORZANO, LUIS A. PEREZ,
RANJIT S. BHULLAR, LUIS M. SANCHEZ

*(Caption Continued on Inside Cover)*

On Appeal from the United States District Court, Southern District of New York,
Honorable Jesse M. Furman, Judge, Case No. 1:12-CV-08450-JMF

## FINAL FORM BRIEF FOR THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES

Warren Postman
U.S. CHAMBER LITIGATION
CENTER, INC.
1615 H Street NW
Washington, D.C. 20062
(202) 463-5337

Michael J. Gray
Brent D. Knight
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 782-3939
*Attorneys for Amicus Curiae*

ANWAR BHATTI, AVNEET KOURA, MAHER MAQSOOD, ATIF RAZAQ, BHAVESH SHAH, KHUSHWANT SINGH, JAMSHED CHOUDHRY, AZIZ URREHMAN, HASAN KHALBASH, PETER PANZICA, ROBINSON MATA, HILARIO A. SANCHEZ, MANSORAHMED RANA, BAUDWIN KOURI, ALEXIS S. GACIA-ALBERTO, MUHAMMAD I. CHOUDHRY, ANA M. HERRA, MARISOL ESPINAL, WALID HAMEHO, ALEXANDER SCHWALLB, ERIC JARMON, KEITH DANIEL, RAFAEL RIJO, BABAB HAFEEZ, NORMAN LEVINE, MARIO GUERRERO BATANTA, LIANG HUA MA, WILLIAM MARTINEZ, MOHAMMED A. MUSA, KERRY BOBB, HARJAR RAHMAN, ELPIDIO HELENA, TAMER RASHDAN, MENA MICHAEL, FELIX L. CARABALLO, MARK SHINDER, JOHN M. HIDALGO, ODISHI, INC., KIRK HAYDEN, BARTOLOME ROSARIO, LUIS VASQUEZ, IRFAN SHAFI, MOHAMMAD A. SIDDIQUI, WADE QUASHIE, JIMMY CHEN, JEFF M. GRA VESANDE, EDISSON BARROS, ANDRZEJ OLECHNOWICZ, NICK WIJESINGHE, (POINT TO POINT CAR & LIMO INC.), JACK GOLDEN, FIROZ AHMED, PAUL GLIBAUSKAS, FELIX A. PAULINO, JUAN DE LOS SANTOS, CHOWDHURY ANOWAR, ZONG RONG ZHU, MOHAMMED GAZI ALI, MEI YAO LIU, KATELYN SANTOS, JOSE JAIMES, IBRAHIM DESOOKI, DONGSEDG YOO, JORGE MONAKS, MALIK HUSSAIN, MARCOS ENDEZ, LUIS AUCAPINA, ANDERSON GONZALEZ, TOWON STEWART, FERAS ISSA, LENKIN PANTALEON, EDGARAUCAPINA, CELSTINO MONTERO, MIKHAIL GERBER, ZYDAN ELNAHAR, DEXTER PUSEY, RANGDEU MULTAN!, SATNAM SINGH, XIANG BO LI, HUANG XIONGJIE, RAFAELA. RISO, ISMAEL MEJIA, KULDIP SINGH, JAN A. KALDA, JEEWAN SINAH, WILSON A. SANTOS, SOHAN SINGH GILL, EUCLIDES PENA, LESTER C. MCDONALD, NORMAN HO, GENNADI PETROVSKI, SATNAM SINGH, ZENXIN WANG, NOBLE YOUNG, FRANCOIS FAN-FAN, MUHAMMAD I. CHOUDHRY, FABIAN MARTINEZ, KONSTANTIN KATZ, RAFAEL OSORIA, NWALA GABRIEL, JOSE M. SOLORZANO, UBALDO DE LOS SANTOS, HARRIKISSOON SEEJATTAN, HARJAR RAHMAN, ADEL ELKAZAZ, PEDRO M. PIASENCIA, KHORSHED ALAM, GARNELL WRIGHTEN, REFAT BHUIYAN, LEO K. STEWART, JEFF M. GRAVESANDE, AHMED NISAR, DANJIT SINGH, HUMAYUN KABIR HUSSAIN, MOHAMMED A. MUSA, HARNEK SINGH WHAR, SHASHI BHATIA, GOGINDER SINGH, ABDELILAH ELKARHAT, MANINDER SINGH, JO GINDER-SINGH, WILMAN MARTINEZ, HARVINDER KHAMRA, DAVID A. SANCHEZ

*(Caption Continued on Following Page)*

SYED FIROZUDDIN, DARIUSZ RYDZEWSKI, YASAR KAHRAMAN, ALI
GAZI MOHAMMED, AHMED M. BAKIER, ONRIS DE LAROSA,
HARVINDERS. BHAMRA, IMTIAZ H. QUERESHI, DAMIR, AHMED
ISMAIL, MUNISH KUMAR, PAUL GLADKEVITCH, TARLOCMAN PAL
SINGH, (T.P.), ADAM KLAG, AL WONG ZHANG, MUSTAPHA
RAHMOUWI, MAHAMMAD ALI SIDDIQUE, SHENG ZHANG LU,
GUSTAVO GARCIA, ASHWIN KUMAR, INDERJIT SINGH, MAN CHENG,
BALWINDER SINGH, JAWAID KAYANI, SUKHDEV SINGH, FERNANDO
AVENDANO, XIONG WEI MI, MOHAMMAD ISLAM, DONGSEOG YOU,
TAOJOCHAN SIHGH, RATIC IVIONOV,JAGDISHKAL, GABRIEL
PIZHA,ANOMWAR I. CHOWDHURY, SAMSON LIAU, NESTOR TERAN,
RAJAN DODEJA, SOCRATES GREGORIADIS, SAAD ATTIA, ANTHONY
KHAN, RAMON A. ALMONTE, BADLANI PRAKASH, JUAN A. SOTO,
MUNJED SHABANEH, JOSE SOLORE, JOSE M.S., ROXANA A. ZETINO,
IRFAN SHAFI, ARCELIA BARROS, CHEUNG YEUNG, POINT TO POINT
CAR & LIMO, INC., VISHAMBER TUKREL, YING TIAN LEI, MIKHAIL
ZEMKO, TAHIR AZIZ, WEN ZHONG LI, KE GENG SHI, N. WESESINGHE,
CHRISTINA SANCHEZ MONTERO, KULYK OLEG, ARIEL RESTITUYO,
SHUHRAT KHAKBERDIYER, ANGEL M. GAYA, BAYRAM ONBASI,
JORGE CONTRERAS, JUAN C. MOGROVEJO, XUN LI FAN, SAMEH S.
BASILY, JOSE PINTO, RAMADANS. KENAWI, DONAVAN JAMES,
IBRAHIM ONBASI, AMANDA SINGH, SULEYMAN ISSI, WAZIR MUGHAL,
ETIENNE TCHITCHUI, DIOGENES PION, IJAZ MAHBOOB, PEDRO
PAZMINO, JING JING WANG,AZID RIAZ, GURMAIL SINGH, ASAND
FARA, LAWRENCE CALLISTE, GUO BAO XUAM, JEETU MULTAN!, KING
WAH YIU, ANJUM ALI, GURMAIL SINGH, AHMED ALJAHMI, BUO XUAN
GUO, AMERICAN CAR LIMO TOURS, INC.,  MOHAMED ABDELAAL,
KHEMLHAND KALIKA, MUNISH KUMAR, SHAHIDULLAH DULAL,

*Plaintiffs-Appellants,*

*v.*

CORPORATE TRANSPORTATION GROUP, LTD., CORPORATE
TRANSPORTATION GROUP INTERNATIONAL, CORPORATE
TRANSPORTATION GROUP WORLDWIDE, INC., NYC 2-WAY
INTERNATIONAL, LTD., ALLSTATE CAR & LIMOUSINE, INC., ARISTA
CAR & LIMOUSINE, LTD., TWR CAR & LIMOUSINE SERVICE, LTD.,
EXCELSIOR CAR AND LIMOUSINE, INC., HYBRID LIMO EXPRESS, INC.,
EDUARD SLININ, GALINA SLININ,

*Defendants-Appellees.*

# TABLE OF CONTENTS

                                                                   Page

TABLE OF AUTHORITIES ................................................................. ii

INTERESTS OF *AMICUS CURIAE* ...................................................1

SUMMARY OF ARGUMENT .............................................................2

ARGUMENT ........................................................................................4

I.    Both Workers And Employers Make Tradeoffs In Choosing Between
      Contractor And Employee Relationships .......................................4

II.   Plaintiffs' Approach Would Erode The Benefits Of Entrepreneurship
      That Inhere In The Independent Contractor Relationship.............................7

III.  *Amici*'s Arguments In Support Of Plaintiffs Are Unavailing ....................12

      A.    NELP's Contentions Are Unfounded...............................................12

      B.    The Secretary's Contentions Are Also Without Merit.....................17

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE...................................................27

CERTIFICATE OF SERVICE .............................................................28

# TABLE OF AUTHORITIES

**Page**

CASES

*Alexander v. Avera St. Luke's Hosp.*,
768 F.3d 756 (8th Cir. 2014) ...................................................15, 18

*Baker v. Flint Engineering & Construction Co.*,
137 F.3d 1436 (10th Cir. 1998) ..........................................22

*Barlow v. C.R. England, Inc.*,
703 F.3d 497 (10th Cir. 2012) ............................................15

*Barnhart v. N.Y. Life Ins. Co.*,
141 F.3d 1310 (9th Cir. 1998) .............................................23

*Browning v. Ceva Freight, LLC*,
885 F. Supp. 2d 590 (E.D.N.Y. 2012) .........................19, 20

*Carrell v. Sunland Const., Inc.*,
998 F.2d 330 (5th Cir. 1993) ...............................................21

*Chao v. Mid-Atlantic Installation Servs., Inc.*,
16 F. App'x 104 (4th Cir. 2001) ..........................................20

*Christopher v. SmithKline Beecham Corp*,
--- U.S. ---, 132 S. Ct. 2156 (2012)...................................17

*Estate of Suskovich v. Anthem Health Plans of Virginia, Inc.*,
553 F.3d 559 (7th Cir. 2010) ...............................................16

*Farlow v. Wachovia Bank of N.C., N.A.*,
259 F.3d 309 (4th Cir. 2001) ...............................................23

*Glatt v. Fox Searchlight Pictures Inc.*,
--- F.3d ---, 2015 WL 4033018 (2d Cir. July 2, 2015) ......................17

*Godlewska v. HAD*,
    916 F. Supp. 2d 246 (E.D.N.Y. 2013) ..................................................19

*Herman v. Express Sixty-Minutes Delivery Service, Inc.*,
    161 F.3d 299 (5th Cir. 1998) ..................................................... 18, 22

*Jacobson v. Comcast Corp.*,
    740 F. Supp. 2d 683 (D Md. 2010)..................................................19

*Kirsch v. Fleet Street, Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ..........................................................18

*Layton v. DHL Exp. (USA), Inc.*,
    686 F.3d 1172 (11th Cir. 2012) ......................................................24

*Meyer v. U.S. Tennis Ass'n*,
    --- F. App'x ---, 2015 WL 3938148 (2d Cir. June 29, 2015) ...................... 15, 24

*New York v. Shalala*,
    119 F.3d 175 (2d Cir. 1997) ..........................................................17

*Nichols v. All Points Transport Corp. of Michigan, Inc.*,
    364 F. Supp. 2d 621 (E.D. Mich. 2005) ..............................................8

*Perdomo v. Ask 4 Realty & Mgmt., Inc.*,
    298 F. App'x 820 (11th Cir. 2008)..................................................16

*Reich v. Circle C. Investments, Inc.*,
    998 F.2d 324 (5th Cir. 1993) ..........................................................21

*Saleem v. Corp. Transp. Group, LTD*,
    52 F. Supp. 3d 526, 536 (S.D.N.Y. 2014) .................................... 14, 23

*Smith v. Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) ..........................................................17

*Thibault v. Bellsouth Telecomms., Inc.*,
    612 F.3d 843 (5th Cir. 2010) ..........................................................16

*Usery v. Pilgrim Equipment Co.*,
527 F.2d 1308 (5th Cir. 1976) ..........................................................21

*Velu v. Velocity Exp., Inc.*,
666 F. Supp. 2d 300 (E.D.N.Y. 2009) ...............................................22

*Yue Yu v. McGrath*,
597 F. App'x 62 (3d Cir. 2014) .........................................................15

OTHER AUTHORITIES

Adam Ozimek, *We Are Not a Nation of Freelancers,* Moody's
Analytics (June 29, 2015) ..................................................................13

Matthias Benz and Bruno S. Frey, *Being Independent Raises
Happiness at Work,* 11 Swedish Economic Policy Review 95
(2004)..................................................................................................5

Jeffrey Eisenach, *The Role of Independent Contractors in the U.S.
Economy*, Navigant Economics (Dec. 2010) .....................................10

Anne Polivka, *Into Contingent and Alternative Employment By
Choice?,* Monthly Labor Review 55 (October 1996).........................5

Steven Cohen and William B. Eimicke, *Independent Contracting:
Policy and Management Analysis* Columbia School of
International Affairs (August 2013) ..........................................passim

Stephen J. Trejo, *The Effects of Overtime Pay Regulation on Worker
Compensation,* 81 The American Economic Review 693 (Sept.
1991) ..................................................................................................11

Oxford Economics and the National Retail Federation *, Rethinking
Overtime: How Increasing Overtime Exemption Thresholds Will
Affect the Retail and Restaurant Industries* (2014) ...........................10

Josh Zumbrun and Anna Louie Sussman, *Proof of a 'Gig Economy'
Revolution Is Hard to Find,* Wall St. J. (July 26, 2015)....................13

## INTERESTS OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It represents 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. More than 96% of the Chamber's members are small businesses with 100 or fewer employees. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community, including cases involving labor and employment matters.

The Chamber has a substantial interest in the Court's interpretation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and other laws that may be applicable to workers classified as independent contractors. Many of the Chamber's members utilize independent contractors. They have an interest in clarifying their obligations under applicable law and building a workforce that can best promote prosperity, innovation, and growth, for their businesses and contracting partners alike.

---

[1] No Party's counsel authored this brief in whole or in part. No person, aside from *amicus curiae*, its members, and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. Counsel of record for all parties have stated that they do not oppose the filing of this brief.

## SUMMARY OF ARGUMENT

As Appellees have demonstrated, and the District Court determined below, there can be but one conclusion in this case based upon the undisputed evidence: Plaintiffs are independent contractors. They determine whether to expend capital and invest in a franchise. Having done so, they determine whether to retain others to work for them or to perform work themselves. They determine when, where, and how much they will work. They determine whether they will use their vehicles to drive for competing black car companies or private customers. Moreover, their profits are determined not only by how much they (and those they retain) work, but by their control of expenses such as the cost of their vehicles, maintenance costs, gas costs, and what they pay any other drivers they retain. And, depending upon their effort and ability to manage such expenses, they may earn substantial profits. In short, they are independent business people, outside the scope of the FLSA, and Defendants properly treat them as such.

The Chamber submits this brief to address the apparent premise of Plaintiffs and their *amici* that independent contractor arrangements are some sort of disfavored "loophole" to the FLSA and the NYLL, which courts should recharacterize as employment relationships in all but the rarest of circumstances. Such hostility toward independent contractor relationships ignores the many benefits that these arrangements have for contractors and businesses alike, and

-2-

would deprive businesses of their well-established rights to choose to hire independent contractors.

Independent contractors benefit from substantial independence and autonomy, including the freedom to decide whether and when to work for themselves or hire others to perform tasks, which multiple studies have linked to increased job satisfaction. Independent contractors typically have control over their own schedule, including whether they will work, the amount they will work, and the times of the day they will work. And they typically have the opportunity to earn substantial additional income based on their own entrepreneurial decisions and willingness to work.

In arguing for their contrary position, Plaintiffs and their *amici*—the National Employment Law Project and affiliated groups, along with the United States Secretary of Labor—warn against a mechanical application of the FLSA's multi-factor analysis for independent contractor status. But they are not seeking a flexible application of the FLSA's well-established test; they are asking this Court to abandon that law. Thus, Plaintiffs and their *amici* downplay the control the drivers in this case have over when, with whom, how long, and even whether they drive, and further downplay the investment made by drivers in their businesses. And in their view, the fact that Plaintiffs have voluntarily chosen to remain in relationships with Defendants—notwithstanding opportunities to end those

relationships and move to other entities that treat drivers as employees rather than independent contractors—is a vice, not a virtue. Plaintiffs and their *amici* ignore the clear vote of confidence cast by drivers showing that their independent contractor relationship with Defendants is mutually beneficial, and ask this Court to substitute its judgment for that of the parties and to rewrite settled contractual arrangements between competent adults. This hostility toward independent contractor relationships is unjustified as a matter of law as well as policy.

Where, as here, an independent contractor has substantial control over whether, when, and with whom to work, and can earn substantial return on a meaningful investment, courts should be exceedingly cautious before disregarding the parties' decision to structure the relationship as an independent contractor arrangement.

The District Court properly granted summary judgment to Defendants, and this Court should affirm that judgment in all respects.

## ARGUMENT

### I.   Both Workers And Employers Make Tradeoffs In Choosing Between Contractor And Employee Relationships.

In choosing whether to work as or hire an independent contractor, a worker and an employer both face a set of tradeoffs. Workers who choose to act as independent contractors give up the additional contractual commitments the employers give their employees along with the protections of state and federal

-4-

employment laws applicable only to employees. In return, however, self-employment brings with it a wide array of benefits. Self-employed individuals generally "have more control over their economic destiny." Steven Cohen and William B. Eimicke, *Independent Contracting Policy and Management Analysis*, Columbia School of International Affairs, at 16 (August 2013) (hereinafter *Independent Contracting*).[2] They exhibit "greater independence and autonomy" than other workers in the economy, Matthias Benz & Bruno S. Frey, *Being Independent Raises Happiness at Work*, 11 Swedish Economic Policy Review 95, 98 (2004),[3] and as a result they report greater job satisfaction, *see Independent Contracting* at 17. Indeed, "the flexibility and independence" that the self-employed have "to choose [their] own hours, clients and manner in which the work is completed" is "[o]ne of the most frequently cited benefits of engaging in independent contracting." *Id.* at 16. And, for certain individuals "who are constrained by conditions outside of the labor market (for example, those with family or school obligations)," self-employment provides "an opportunity to work that they might not otherwise have." Anne Polivka , *Into Contingent and*

---

[2] *Available at* http://www.columbia.edu/~sc32/documents/IC_Study_Published.pdf (last visited July 28, 2015).

[3] *Available at* http://brunofrey.com/articles/409_04.pdf (last visited July 28, 2015).

*Alternative Employment By Choice?*, Monthly Labor Review 55, 74 (October 1996).[4]

Because "independent contractors choose their own jobs and clients, the quantity and quality of work is better correlated with the amount of money they make." *Independent Contracting* at 16. Thus, "often highly motivated contractors are more likely to earn more money than regular employees." *Id.*

For an employer, hiring an independent contractor means foregoing the extensive control that otherwise would come with hiring an employee. Subject to federal and state employment laws, an employer can determine when and for how long employees will work (including whether they may work part time or full time), may prohibit employees from working for other employers, may direct in minute detail how they perform their job, and may pay the employees a fixed salary, capturing any additional profit for himself or herself.

While an employer who hires an independent contractor foregoes the above benefits, he gains other offsetting ones. Hiring an independent contractor allows the employer to reduce his capital requirements, shift some of the risk (and reward) to a separate business, and avoid the many costs of the employment relationship, including the rigidity of federal and state employment laws.

---

[4] *Available at* http://www.bls.gov/mlr/1996/10/art6full.pdf (last visited July 28, 2015).

How best to balance the above tradeoffs is an individual judgment by each worker and each business.  And it is a judgment that each is free to make.  There is nothing suspect about workers choosing to go into business for themselves, or about employers choosing to hire them.

## II. Plaintiffs' Approach Would Erode The Benefits Of Entrepreneurship That Inhere In The Independent Contractor Relationship.

If Plaintiffs prevail in this case, many of the benefits of self-employment would be in immediate jeopardy.

Plaintiffs, along with other black car drivers who declined to opt-in to this action, are responsible for any number of entrepreneurial decisions, putting themselves in control of their economic destiny, which is itself a critical benefit.  As the Secretary of Labor concedes in his *amicus* brief (Br. at 19), Plaintiffs all have the ability to "purchase multiple franchises, rent out their franchises, and pay others to drive their cars."  In other words, each of the Plaintiffs and non-opt-in drivers are free to choose whether to even enter a franchise relationship and how many franchises to purchase.  Having decided to enter a franchise relationship, Plaintiffs and other drivers had the freedom to decide whether to buy or rent, and *from whom* to buy or rent.  (Defs.' 56.1 Statement ¶¶ 44-53, A-1204-05.)  And, as with other self-employed business people, these decisions have real economic consequences —franchise purchase prices range from $20,000 to $60,000 depending on which franchisor the Plaintiff or other driver chooses to buy from

-7-

and the type of agreement they negotiate.  (Defs.' 56.1 Statement ¶¶ 44-45,  A-1204.)

But that is only the start of the entrepreneurial decisions that Plaintiffs and other drivers must make.  Plaintiffs also have the discretion whether to retain others to perform the driving associated with their franchise or to perform that function themselves.  They decide whether to purchase or rent their car, and which kind.  (Defs.' 56.1 Statement ¶¶ 189, 193-97, A-1226-27.)  They decide when it is most economically advantageous to work.  (Defs' 56.1 Statement ¶¶ 112-14, A-1213-14.)  They decide what routes to drive.  (Defs' 56.1 Statement ¶¶ 31-32, A-1203.)  They decide whether to work with one dispatcher, accept work from multiple companies, or recruit their own private clients.  (Defs' 56.1 Statement ¶¶ 257-62, A-1247-50.)  They decide whether to advertise or otherwise promote their services.  (Defs' 56.1 Statement ¶¶ 107, 187, A-1213, A-1225-26.)  And they manage the costs of their business, including maintenance and repair costs for their vehicles (Defs' 56.1 Statement ¶¶ 206-07, A-1228-29), when and where to purchase gasoline (Defs' 56.1 Statement ¶¶ 208-09, A-1229), and procurement of business insurance, (Defs' 56.1 Statement ¶¶ 215-17, A-1230).  These are the very types of quintessential business decisions that small-business owners control on a regular basis.  *See, e.g.*, *Nichols v. All Points Transp. Corp. of Mich., Inc.,* 364 F. Supp. 2d 621, 632 (E.D. Mich. 2005) ("Taking on these additional responsibilities

demonstrates that the drivers must exercise entrepreneurial skills often associated with small business owners.").

Plaintiffs and other black car drivers experience "flexibility and independence" as a reward for their entrepreneurship. *See Independent Contracting*, at 16. They have no fixed schedule; they can work as few or as many hours as they want and they always have discretion to decide the "zone" where they want to drive. (Defs.' 56.1 Statement ¶¶ 111-14, A-1213-14; Malchikov Decl. ¶ 9, A-222.) They have unlimited discretion to decide which seasons to work, and when to take vacation, without any notice to Defendants. They can abstain completely from driving for any period they choose, and can resume driving at any time and without notice. (Defs.' 56.1 Statement ¶ 116-18, A-1214.) There is no penalty of any kind if they stop driving for a day, a week, a month, or permanently, and some Plaintiffs took months off and then returned to driving. (Defs.' 56.1 Statement ¶¶ 118-19, A-1214.) Others never drive themselves and instead lease out their franchise for others to drive. (Borisov Decl. ¶¶ 3, 5, A-218.)

Likewise, Plaintiffs and other black car drivers have the ability to earn substantial sums based upon their initiative, entrepreneurial talents, and willingness to work. For instance, one Plaintiff, Jagjit Singh, earned an average of about $140,000 per year and another, Jairo Bautista, earned about $90,000. (Defs.' 56.1 Statement ¶ 251, A-1243-47.) And other individuals chose to provide services

only on a part-time basis, correspondingly earning less, but adapting their work-life balance to meet their needs. (Borisov Decl. ¶¶ 5, 7, A-218.)

If Plaintiffs' position in this case prevails, the flexibility that Defendants' drivers currently enjoy would almost invariably end. *See Independent Contracting* at 16 (noting that one of "the most frequently cited benefits of engaging in independent contracting is the flexibility and independence that this type of arrangement affords"). Employers responsible for meeting federal and state overtime requirements must track workers' hours, and they almost never give employees freedom to work as much or as little as they want. To the contrary, to control labor costs they must impose fixed schedules, meaning that drivers would lose their current ability to effectively control their hours.[5]

Moreover, there is little reason to infer that, in the long run, drivers would benefit financially from reclassification as employees under the FLSA and New York wage provisions. *See, e.g.*, Oxford Economics and the National Retail

---

[5] A number of studies, moreover, have suggested that limitations on employers' ability to classify service providers as independent contractors hampers job creation and job growth. *See, e.g.*, *Independent Contracting*, at 85 ("Ultimately, the tradeoff for government's heightened enforcement of misclassification seems to come down to choosing between ease of tax collection on the one side and job creation and economic growth on the other."); Jeffrey Eisenach, *The Role of Independent Contractors in the U.S. Economy*, Navigant Economics, at ii (Dec. 2010) (concluding that "policy changes that curtail independent contracting . . . would result in higher unemployment, slower economic growth and reduced economic welfare"), *available at* http://www.aei.org/wp-content/uploads/2012/08/-the-role-of-independent-contractors-in-the-us-economy_123302207143.pdf (last visited July 28, 2015).

Federation, *Rethinking Overtime: How Increasing Overtime Exemption Thresholds Will Affect The Retail And Restaurant Industries* (2014).[6]  When companies are required to provide additional compensation and benefits to workers already earning substantial incomes, they naturally make adjustments to workers' hours and base compensation levels to ensure that overall labor costs remain steady:

> [N]either the hourly wage rate nor the number of hours worked represents a fixed external constraint imposed on companies.  Both are jointly negotiated between companies and workers at the time of employment.  While overtime rules may affect these negotiations, both by restricting potential outcomes and by altering workers' and companies' external options, they generally do not prevent workers and firms from arriving at the original outcome that they would have concluded in the absence of these rules.

*Id*. at 20.  Thus, when faced with reclassification of workers from overtime-exempt to overtime-eligible, employers rationally "use a variety of strategies to reduce the additional labor costs in order to remain competitive," such as lowering hourly rates, cutting bonuses and benefits, and reducing workers' hours to fewer than 40 per week.  *Id*. at 4.  *See also* Stephen J. Trejo, *The Effect of Overtime Pay Regulation on Worker Compensation*, 81 The American Economic Review 693, 738 (Sept. 1991) (concluding that "overtime pay regulation does not significantly increase weekly earnings").

---

[6] *Available at* https://nrf.com/sites/default/files/Documents/Rethinking_ Overtime.pdf (last visited July 28, 2015).

It is notable, moreover, that any Plaintiff or other black car driver who wishes to be classified as an employee, rather than remain independent, already has that option. There are other livery and limousine companies in New York that have chosen to hire and treat drivers as statutory employees, not independent contractors. *See* Black Car Assistance Corporation *Amicus* Br. at 13. Indeed, competing companies specifically advertise the opportunity to work as an employee as a point of contrast. *See* Black Car News, July 2015, at 20 (advertisement stating, "Why pay the high costs of gasoline, insurance and maintenance? Sell your franchise and come drive our company owned fleet of new 2013-2016 vehicles for us.").[7] That Plaintiffs voluntarily chose to remain independent contractors speaks volumes for the beneficial nature of that arrangement in this setting. There is no reason for this Court to undermine that option for persons (including Plaintiffs) who chose to avail themselves of it.

## III.   *Amici***'s Arguments In Support Of Plaintiffs Are Unavailing.**

The various arguments raised by Plaintiffs' *amici*, the National Employment Law Project and related groups ("NELP"), and the Secretary of Labor of the United States ("Secretary"), do not establish that reversal is warranted here.

---

[7] *Available at* http://editions.us.com/blackcarnews/#20 (last visited July 28, 2015).

## A. NELP's Contentions Are Unfounded.

For its part, NELP raises three unfounded contentions. <u>First</u>, NELP claims that there has been an increase in independent contractor arrangements and complains that these arrangements deprive governments of tax revenues and workers of the protections of the employment relationship. NELP *Amicus* Br. at 8-13. NELP's premise is highly debatable, as recent data from the Department of Labor suggest that "[f]ar from turning into a nation of gig workers, Americans are becoming slightly less likely to be self-employed, and less prone to hold multiple jobs." Josh Zumbrun and Anna Louie Sussman, *Proof of a 'Gig Economy' Revolution Is Hard to Find*, Wall St. J. (July 26, 2015).[8] *See also* Adam Ozimek, *We Are Not a Nation of Freelancers*, Moody's Analytics (June 29, 2015) (noting that the Census Bureau's Current Population Survey shows that "the share of the workforce reporting they are unincorporated self-employed is declining and lower than at any point in the last 70 years").[9]

Even if NELP's premise were correct, however, its conclusion would simply beg the question. NELP is presumably not opposed to entrepreneurship as a categorical matter; yet it offers no basis for assuming that any rise in independent

---

[8] *Available at* http://www.wsj.com/articles/proof-of-a-gig-economy-revolution-is-hard-to-find-1437932539 (last visited July 28, 2015).

[9] *Available at* https://www.economy.com/dismal/analysis/datapoints /255258/We-Are-Not-a-Nation-of-Freelancers/ (last visited July 28, 2015).

contractor arrangements reflects a disingenuous attempt by employers to mischaracterize the true status of workers. Of course, for the reasons already discussed, it is at least as likely that any rise in independent contractor arrangements reflects the mutual benefits of those arrangements for businesses and workers alike. Under current law, businesses have the right to hire independent contractors, and it would not be surprising if they increasingly chose to do so as the costs attendant to hiring an employee increase. That is no reason to distort the definition of an employee under the FLSA or the NYLL.

Second, NELP errs in claiming (Br. at 17) that the District Court "lost sight of the central question: whether the drivers can run a business separate and independent from Defendants' business operation." To the contrary, that was the "central question" posed by the District Court, and the Court properly answered it in the affirmative. *See Saleem v. Corp. Transp. Group., Ltd.*, 52 F. Supp. 3d 526, 536 (S.D.N.Y. 2014) ("The overriding consideration under the FLSA is the economic reality of the relationship—that is, whether the workers depend on someone else's business for the opportunity to render service or are in business for themselves.") (internal quotations and citations omitted); *see also*, *e.g.*, *id.* at 539 (concluding that "there is no question that drivers had an opportunity for profit and loss in their businesses"); *id.* at 542 (concluding that "in order to be a successful driver for Defendants in this lawsuit, one needed to exercise a significant degree of

-14-

independent initiative"); *id.* at 543 (concluding that not only could Plaintiffs "go out the next day with their [cars] and equipment and immediately work for another [car service,] but many of them did so, frequently" (internal quotations and citations omitted)).

Third, NELP is off base with its suggestion (Br. at 17) that there is an "increasing acknowledgement" that independent contractor questions "are more appropriately decided by a jury."  There is no such acknowledgement in this Court or any other; where the material facts are undisputed, the *legal* status of workers is of course a *legal* question.  *See, e.g.*, *Meyer v. U.S. Tennis Ass'n*, -- F. App'x ---, 2015 WL 3938148, at *1 (2d Cir. June 29, 2015) (affirming summary judgment, concluding that "the District Court correctly determined that plaintiffs were independent contractors, not employees, for purposes of the FLSA and the NYLL, substantially for the reasons stated in its thorough and well-reasoned . . . opinion"); *Yue Yu v. McGrath*, 597 F. App'x 62, 66 (3d Cir. 2014) (affirming summary judgment, and stating, "[e]ven given the breadth of the [FLSA's] definitions, and construing the facts in the light most favorable to [plaintiff], we agree with the District Court that 'no reasonable jury could conclude that [she] was an employee of [defendant].'"); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 761-62 (8th Cir. 2014) (affirming grant of summary judgment, and stating, "[t]hough the employee/independent contractor issue is fact intensive . . ., we have consistently

-15-

held that it is an issue of law and therefore may often be decided by the court on a summary judgment record"); *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 507 (10th Cir. 2012) (finding that the record evidence "suggests that [plaintiff] was in business for himself" and "affirm[ing] the district court's decision to grant summary judgment"); *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 849 (5th Cir. 2010) ("Because we hold that the summary judgment record does not contain sufficient evidence to support a finding that [plaintiff] was an FLSA employee . . . we affirm the judgment dismissing the FLSA claims."); *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 570 (7th Cir. 2009) (concluding that "the district court properly awarded summary judgment" to defendants); *Perdomo v. Ask 4 Realty & Mgmt., Inc.*, 298 F. App'x 820, 822 (11th Cir. 2008) ("Because we agree with the district court's determination that [plaintiff] was an independent contractor, we affirm the district court's grant of summary judgment for the Defendants.").

NELP's contrary position is legally unsupported. Allowing demonstrably baseless cases to reach a jury—cases in which the legal status of workers does not turn on any disputed facts— would squander judicial resources and allow plaintiffs' attorneys (*i.e.*, NELP's constituents) to extort settlements simply by threatening to impose needless legal expenses. These are the precise evils that Rule 56 was designed to avoid.

## B.    The Secretary's Contentions Are Also Without Merit.

The Secretary's *amicus* brief raises several arguments that are equally unavailing.[10] Indeed, although invoking the concept of "economic reality" (Secretary *Amicus* Br. at 12), the Secretary repeatedly asks this Court to close its eyes to the reality dictated by the undisputed evidence in this case.

First, the Secretary quibbles (Br. at 13-17) with the District Court's conclusion that Defendants' lack of control over Plaintiffs favors independent contractor status. Specifically, the Secretary contends (*id.* at 13) that the District

---

[10] The Secretary does not argue that his brief is entitled to deference from this Court. The reason, undoubtedly, is that the Secretary is not offering a statutory interpretation that carries the force of law or an interpretation of the Department of Labor's own regulations, but instead argues that the District Court's conclusion was erroneous under case law from this Court and others. (*See generally* Secretary *Amicus* Br. at 12.) *See Glatt v. Fox Searchlight Pictures Inc.*, --- F.3d ---, 2015 WL 4033018 at *4 (2d Cir. July 2, 2015) (quoting *New York v. Shalala*, 119 F.3d 175, 180 (2d Cir. 1997) and holding that "[u]nlike an agency's interpretation of ambiguous statutory terms or its own regulations, 'an agency has no special competence or role in interpreting a judicial decision.'"). Deference is particularly unwarranted where, as here, an agency adopts a position in an *amicus* brief that would result in the imposition of "potentially massive liability. . . for conduct that occurred well before" the agency's position was announced. *Christopher v. SmithKline Beecham Corp*, -- U.S. ---, 132 S. Ct. 2156, 2167 (2012). Since the creation of the black car industry approximately thirty years ago, many drivers have been classified as exempt independent contractors, without interference from the Department of Labor. *See* Black Car Assistance Corporation Amicus Br. at 14. That fact renders the Secretary's newfound positions here legally suspect. *See Christopher*, 132 S. Ct. at 2168 ("[W]here, as here, an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute."); *cf. Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 929 (6th Cir. 2014) (declining deference where "the amicus brief in this case can only be characterized as, to borrow a phrase from Justice Frankfurter, an expression of a mood").

Court gave "too much weight to Plaintiffs' abilities to set their own schedules" and the fact (*id.* at 14) that "Plaintiffs were not prohibited from working for other black car companies." By contrast, the Secretary contends, the Court did not place enough emphasis on what he claims (*id.* at 16) is "Defendant's control over Plaintiffs through supervision and discipline."

If anything, however, Plaintiffs' freedom from control favors independent contractor status to a greater degree than even suggested by the District Court. A service provider's ability to set his or her own schedule is strongly indicative of independent contractor status. *See, e.g.*, *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 171 (2d Cir. 1998) (finding fact that a worker is "free to set his own schedule and take vacations when he wished" is strongly indicative of independent contractor status); *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 762 (8th Cir. 2014) (finding fact that doctor "maintained complete freedom to set his schedule" indicative of independent contractor status). Similarly, a service provider's ability to work for multiple clients strongly suggests he or she is an independent contractor. *See*, *e.g, Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (finding fact that "[d]rivers are able to work for other . . . delivery companies" points to independent contractor status). Here, the undisputed evidence demonstrates that Plaintiffs' ability to decide where, when, and whether to provide services is effectively complete. Appellees' Br. at 8-12.

-18-

Moreover, the District Court was correct in its determination that Defendants' involvement in supervision and discipline of drivers, if any, does not demonstrate meaningful control over Plaintiffs' working conditions. The cases are clear that measures to ensure compliance with contractual requirements, not to mention passenger safety, do not amount to the sort of day-to-day control of working conditions that indicates employee status. *See, e.g.*, *Godlewska v. HAD*, 916 F. Supp. 2d 246, 260 (E.D.N.Y. 2013) (granting summary judgment, concluding that "[q]uality control and compliance monitoring that stem from the . . . nature of the goods or services being delivered" is not indicative of an employment relationship); *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 608 (E.D.N.Y. 2012) (granting summary judgment, noting that while "Defendants certainly had some degree of control over . . . branding (*i.e.*, the car decals and uniforms), as well as the overall safe performance of the Plaintiffs in their tasks," their control was "not so great as to weigh in favor of finding the Plaintiffs to be employees as opposed to independent contractors"); *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 691-92 (D. Md. 2010) (finding cable technicians to be independent contractors notwithstanding certain performance standards and noting, "[i]t is . . . significant that the control Comcast does exercise is in part designed to protect Comcast customers," which is "qualitatively different from the control

-19-

exercised by employers over employees"). In short, the District Court did not err here.

Second, the Secretary claims (Br. at 17) that "Plaintiffs' opportunity for profit or loss did not depend on their managerial skill." But that sells the Plaintiffs short. Their decisions on myriad issues—whether to rent or buy a franchise; whether to drive their own car or lease their franchise to another driver, or simply to hold a franchise as an investment; which car to buy or rent, and whether to use a personal car or acquire a car solely for business purposes; how to manage and control required expenses like gasoline, maintenance and insurance; when to work, in which geographic area to work, and which routes to drive; whether to attract private clients or work solely based on the dispatch system; and whether to work for one or more dispatch companies—all call for the exercise of sound, independent business judgment and initiative, and are thus strongly indicative of independent contractor status. *See, e.g.*, *Browning*, 885 F. Supp. 2d at 608 (fact that profit and loss dependent, in part, on "investment in bigger vehicles and hiring additional employees in order to increase their efficiency and capacity" favored independent contractor status); *Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 F. App'x 104, 107 (4th Cir. 2001) ("[Plaintiff's] net profit or loss depends on his skill in meeting technical specifications . . .; on the business acumen with which

-20-

[plaintiff] makes his required capital investments . . .; and on [plaintiff's] decision whether to hire his own employees or to work alone.").

Third, the Secretary argues by non sequitur when he attempts (Br. at 21-22) to compare the size of individual drivers' investments to Defendants' overall capital outlay. Under that approach, any sizeable company would be at risk of an employer/employee finding any time it retained the services of a small, independent business person. The far more meaningful approach is to examine whether the Plaintiffs' investment is sufficient enough—both in terms of costs and in terms of the type of capital purchased—to suggest that he or she is, in fact, an independent business person. That is certainly so here, given the drivers' significant investments in, among other things, the purchase of a franchise, car, license, and insurance. *See, e.g.*, *Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 333-34 (5th Cir. 1993) (independent contractor finding supported by fact that individual investments in equipment averaged $15,000 per welder, notwithstanding fact that putative employer's "overall investment in each pipeline construction project was obviously significant").[11]

---

[11] The cases cited by the Secretary (Br. at 21-22) do not suggest a different result. Several involve individuals whose investment was much smaller than Plaintiffs' here. Indeed, in *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1313-14 (5th Cir. 1976), for example, the plaintiffs effectively made no investment – they purchased the prior operator's receivables, often using financing from the defendant, and in all cases defendant "guaranteed" plaintiffs' return. And while the exotic dancers in *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 328 (5th

Finally, the Secretary errs with his mechanical assessment (Br. at 24) that Plaintiffs' relationships with Defendants were "permanent and indefinite" solely because they "ranged from two to eighteen years." The pertinent inquiry here looks not just at the temporal length of the relationship, but instead at the totality of the circumstances, including (but not limited to) the ease with which the relationship can be ended, whether the relationship involves a series of distinct jobs, whether the contractor may take his or her own capital with them upon exiting the relationship, and the freedom of the contractor to set his/her own schedule. *See, e.g.*, *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (granting summary judgment to defendant, noting that "if either party were to terminate the Agreement today, Plaintiff could go out the next day with the same van, clothes, equipment, computer, printer, and other supplies, and immediately work for another shipping company"). The District Court properly

---

(continued…)

Cir. 1993) did at least purchase something, their investments were limited to costumes and cost as little as $40 per month. Further, *Baker v. Flint Engineering & Construction Co*., 137 F.3d 1436, 1444 (10th Cir. 1998) stands only for the unremarkable proposition that, by itself, the fact that "plaintiffs are required to supply equipment to perform their jobs" will not transform them into independent contractors if (unlike here) they are treated as employees in all other respects. Finally, *Hermann v. Express Sixty—Minutes Delivery Services, Inc*., 161 F.3d 299 (5th Cir. 1998) supports Defendants' position; in that case, the Fifth Circuit affirmed summary judgment against the plaintiffs.

determined that this totality of factors favors a finding of independent contractor status. *Saleem*, 52 F. Supp. 3d at 542-43.

There are good reasons for this sort of broad-based approach, as opposed to one that looks solely to length of time. For one, and contrary to the Secretary's baseline assumption, many independent contractor relationships are not simply short-term affairs. Rather, in many cases, quintessential independent contractor relationships—such as a lawyer/client relationship or a doctor/patient relationship—might last for years. *See, e.g.*, *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 315 (4th Cir. 2001) (working relationship of several years between lawyer and client did not mean that lawyer was an employee of client); *Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998) (sixteen-year relationship insufficient to make insurance agent employee of defendant). Indeed, developing long-standing, mutually beneficial relationships with existing clients is certainly an easier and more profitable way for a contractor to make money than continually searching for new clients.

Moreover, the fact that Plaintiffs chose to remain affiliated with Defendants for extended periods of time, if anything, is evidence that they found the relationships to be mutually beneficial, and should not be a reason for this Court to alter the terms of the relationships or impose after-the-fact liability. As noted above, the drivers have many alternatives, including working as an hourly

-23-

employee for limousine or livery companies.  *See supra* at 10; *see also* Black Car Assistance Corporation *Amicus* Br. at 13 (explaining the fully-developed driver economy in the New York City area and the multitude of options drivers have).  In other words, that drivers are repeatedly presented with different opportunities, but decide to remain for long periods of time with Defendants, is yet more evidence of their independent status and the mutual benefits inherent in their business relationship.[12]

## CONCLUSION

Although the definition of an employee is determined by the totality of the circumstances based on whether a worker is in business for himself, the case law demonstrates that this analysis turns heavily on the degree of autonomy held by the worker as well as his or her opportunity for profit on an investment.  Where these

---

[12] Although the District Court concluded that Plaintiffs perform work that is integral to Defendants' business, the Secretary complains (Br. at 26-27) that the court did not give this factor enough weight.  Again, not so.  Based on the totality of the circumstances, this Court recently affirmed summary judgment for a defendant in an independent contractor misclassification case, notwithstanding a finding that the plaintiffs in that case formed "an integral part" of the defendant's operation.  *See Meyer v. U.S. Tennis Ass'n.*, --- F. App'x. ---, 2015 WL 3938148 at *1 (2d. Cir. June 29, 2015); *see also Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1180 (11th Cir. 2012) (affirming summary judgment for defendant, ascribing little weight to claim that drivers were integral to operations where they "performed most of their work away from [defendant's] facilities and supervision," did not work "side-by-side with [defendant's] employees," drove "vehicles not owned by [defendant]," and were not "contractually restricted from using those vehicles to serve other companies").  As stated in Defendants' papers and above, the totality of the circumstances here more than favors affirmance of the District Court's ruling.

factors are present, there is no basis in law or policy to place a thumb on the scale in favor of finding an employment relationship. And where, as here, an independent contractor has substantial control over whether, when, and with whom to work, and can earn substantial return on a meaningful investment, courts should be exceedingly cautious before disregarding the parties' decision to structure the relationship as an independent contractor arrangement.

Dated:      August 25, 2015      Respectfully submitted,


/s/ Brent D. Knight
_____

Warren Postman              Michael J. Gray
U.S. CHAMBER LITIGATION     Brent D. Knight
CENTER, INC.               JONES DAY
1615 H Street NW           77 West Wacker Drive, Suite 3500
Washington, D.C.  20062      Chicago, Illinois 60601-1692
(202) 463-5337             Telephone:  (312) 782-3939
                         Facsimile:   (312) 782-8585

                         *Attorneys for Amicus Curiae*

-26-

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Federal Rule of Appellate Procedure 32(a), the undersigned certifies that this brief complies with the applicable type-volume limitation, typeface requirements, and type-style requirements.

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because the brief contains 5,946 words, excluding exempt portions.

2. The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2007 with 14-point Times New Roman font in text and footnotes.

Dated:       August 25, 2015          /s/ Brent D. Knight
                                      Brent D. Knight

## CERTIFICATE OF SERVICE

I certify that on the 25th day of August 2015, I filed the foregoing brief

using this Court's Appellate CM/ECF system, which effected service on all parties.


/s/ Brent D. Knight

Brent D. Knight
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585