# 15-88-cv

## United States Court of Appeals
### FOR THE SECOND CIRCUIT

———————————

MAZHAR SALEEM, Individually and on behalf of all others similarly situated, JAGJIT SINGH, Individually and on behalf of all others similarly situated, ANJUM ALI, MALOOK SINGH, CARLOTA BRIONES, JAIRO BAUTISTA, JOSE CABRERA, MARLENE PINEDO, MIRIAM SOLORZANO, MOHAMMAD MIAN, MOHAMMAD SIDDIQUI, S. PEDRO DUMAN, RAJAN KAPOOR, WILMAN MARTINEZ, JOSE SOLORZANO, LUIS A. PEREZ, RANJIT S. BHULLAR, LUIS M. SANCHEZ, ANWAR BHATTI, AVNEET KOURA, MAHER MAQSOOD, ATIF RAZAQ, BHAVESH SHAH, KHUSHWANT SINGH, JAMSHED CHOUDHRY, AZIZ URREHMAN, HASAN KHALBASH, PETER PANZICA, ROBINSON MATA, HILARIO A. SANCHEZ, MANSOR AHMED RANA, BAUDWIN KOURI, ALEXIS S. GACIA-ALBERTO, MUHAMMAD I. CHOUDHRY, ANA M. HERRA, MARISOL ESPINAL, WALID HAMEHO, ALEXANDER SCHWALLB, ERIC JARMON, KEITH DANIEL, RAFAEL RIJO, BABAB HAFEEZ, NORMAN LEVINE, MARIO GUERRERO

(Caption Continued on Inside Cover)

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR *AMICI CURIAE* IN SUPPORT OF APPELLEES AND IN FAVOR OF AFFIRMANCE

MINTZ & GOLD LLP
Steven G. Mintz
Jeffrey D. Pollack
600 Third Avenue, 25th Floor
New York, N.Y. 10016
(212) 696-4848
*Attorneys for Amici Curiae*

BATANTA, LIANG HUA MA, WILLIAM MARTINEZ, MOHAMMED A. MUSA, KERRY BOBB, HARJAR RAHMAN, ELPIDIO HELENA, TAMER RASHDAN, MENA MICHAEL, FELIX L. CARABALLO, MARK SHINDER, JOHN M. HIDALGO, ODISHI, INC., KIRK HAYDEN, BARTOLOME ROSARIO, LUIS VASQUEZ, IRFAN SHAFI, MOHAMMAD A. SIDDIQUI, WADE QUASHIE, JIMMY CHEN, JEFF M. GRAVESANDE, EDISSON BARROS, ANDRZEJ OLECHNOWICZ, NICK WIJESINGHE, (POINT TO POINT CAR & LIMO INC.), JACK GOLDEN, FIROZ AHMED, PAUL GLIBAUSKAS, FELIX A. PAULINO, JUAN DE LOS SANTOS, CHOWDHURY ANOWAR, ZONG RONG ZHU, MOHAMMED GAZI ALI, MEI YAO LIU, KATELYN SANTOS, JOSE JAIMES, IBRAHIM DESOOKI, DONGSEDG YOO, JORGE MONAKS, MALIK HUSSAIN, MARCOS MENDEZ, LUIS AUCAPINA, ANDERSON GONZALEZ, TOWON STEWART, FERAS ISSA, LENKIN PANTALEON, EDGAR AUCAPINA, CELSTINO MONTERO, MIKHAIL GERBER, ZYDAN ELNAHAR, DEXTER PUSEY, RANGDEU MULTANI, SATNAM SINGH, XIANGBO LI, HUANG XIONG JIE, RAFAEL A. RISO, ISMAEL MEJIA, KULDIP SINGH, JAN A. KALDA, JEEWAN SINAH, WILSON A. SANTOS, SOHAN SINGH GILL, EUCLIDES PENA, LESTER C. MCDONALD, NORMAN HO, GENNADI PETROVSKI, SATNAM SINGH, ZENXIN WANG, NOBLE YOUNG, FRANCOIS FAN-FAN, MUHAMMAD I. CHOUDHRY, FABIAN MARTINEZ, KONSTANTIN KATZ, RAFAEL OSORIA, NWALA GABRIEL, JOSE M. SOLORZANO, UBALDO DE LOS SANTOS, HARRIKISSOON SEEJATTAN, HARJAR RAHMAN, ADEL ELKAZAZ, PEDRO M. PIASENCIA, KHORSHED ALAM, GARNELL WRIGHTEN, REFAT BHUIYAN, LEO K. STEWART, JEFF M. GRAVESANDE, AHMED NISAR, DANJIT SINGH, HUMAYUN KABIR HUSSAIN, MOHAMMED A. MUSA, HARNEK SINGH WHAR, SHASHI BHATIA, GOGINDER SINGH, ABDELILAH ELKARHAT, MANINDER SINGH, JO GINDER-SINGH, WILMAN MARTINEZ, HARVINDER KHAMRA, DAVID A. SANCHEZ, SYED FIROZUDDIN, DARIUSZ RYDZEWSKI, YASAR KAHRAMAN, ALI GAZI MOHAMMED, AHMED M. BAKIER, ONRIS DE LA ROSA, HARVINDER S. BHAMRA, IMTIAZ H. QUERESHI, DAMIR, AHMED ISMAIL, MUNISH KUMAR, PAUL GLADKEVITCH, TARLOCMAN PAL SINGH, (T.P.), ADAM KLAG, AL WONG ZHANG, MUSTAPHA RAHMOUWI, MAHAMMAD ALI SIDDIQUE, SHENG ZHANG LU, GUSTAVO GARCIA, ASHWIN KUMAR, INDERJIT SINGH, MAN CHENG, BALWINDER SINGH, JAWAID KAYANI, SUKHDEV SINGH, FERNANDO AVENDANO, XIONG WEI MI, MOHAMMAD ISLAM, DONGSEOG YOU, TAOJOCHAN SIHGH, RATIC SHIVIONOV, JAGDISH KAL, GABRIEL PIZHA, ANOMWAR I. CHOWDHURY, SAMSON LIAU, NESTOR TERAN, RAJAN DODEJA, SOCRATES GREGORIADIS, SAAD ATTIA, ANTHONY KHAN, RAMON A. ALMONTE, BADLANI PRAKASH, JUAN A. SOTO, MUNJED SHABANEH, JOSE SOLORE, JOSE M.S., ROXANA A. ZETINO, IRFAN SHAFI, ARCELIA BARROS, CHEUNG YEUNG, POINT TO POINT CAR & LIMO, INC., VISHAMBER TUKREL,

(Caption Continued on Following Page)

YING TIAN LEI, MIKHAIL ZEMKO, TAHIR AZIZ, WEN ZHONG LI, KE GENG SHI, N. WESESINGHE, CHRISTINA SANCHEZ MONTERO, KULYK OLEG, ARIEL RESTITUYO, SHUHRAT KHAKBERDIYER, ANGEL M. GAYA, BAYRAM ONBASI, JORGE CONTRERAS, JUAN C. MOGROVEJO, XUN LI FAN, SAMEH S. BASILY, JOSE PINTO, RAMADAN S. KENAWI, DONAVAN JAMES, IBRAHIM ONBASI, AMANDA SINGH, SULEYMAN ISSI, WAZIR MUGHAL, ETIENNE TCHITCHUI, DIOGENES PION, IJAZ MAHBOOB, PEDRO PAZMINO, JING JING WANG, AZID RIAZ, GURMAIL SINGH, ASAND FARA, LAWRENCE CALLISTE, GUO BAO XUAM, JEETU MULTANI, KING WAH YIU, ANJUM ALI, GURMAIL SINGH, AHMED ALJAHMI, BUO XUAN GUO, AMERICAN CAR LIMO TOURS, INC., MOHAMED ABDELAAL, KHEMLHAND KALIKA, MUNISH KUMAR, SHAHIDULLAH DULAL,

*Plaintiffs-Appellants,*

-against-

CORPORATE TRANSPORTATION GROUP, LTD., CORPORATE TRANSPORTATION GROUP INTERNATIONAL, CORPORATE TRANSPORTATION GROUP WORLDWIDE, INC., NYC 2-WAY INTERNATIONAL, LTD., ALLSTATE CAR & LIMOUSINE, INC., ARISTA CAR & LIMOUSINE, LTD., TWR CAR & LIMOUSINE SERVICE, LTD., EXCELSIOR CAR AND LIMOUSINE, INC., HYBRID LIMO EXPRESS, INC., EDUARD SLININ, GALINA SLININ,

*Defendants-Appellees.*

## RULE 26.1 STATEMENT

None of the *Amici Curiae* who are submitting this Brief are corporate

entities. Thus, no disclosure statement is required under Fed. R. App. P. 26.1.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ii

STATEMENT OF THE ISSUE........................................................................ 1

STATEMENT OF THE INTEREST AND AUTHORITY TO FILE ............. 1

STATEMENT OF THE CASE......................................................................... 4

    A.     Introduction ........................................................................... 4

    B.     History of the Black Car Industry ...................................... 6

ARGUMENT.................................................................................................... 8

      FRANCHISEES WHO AFFILIATE WITH BLACK CAR BASES
      ARE INDEPENDENT CONTRACTORS, NOT EMPLOYEES .......... 8

CONCLUSION.............................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Air Transit, Inc. v. NLRB*,
    679 F.2d 1095 (4th Cir. 1982) ..................................................................... 12

*Barfield v. New York City Health & Hospitals Corp.*,
    537 F.3d 132 (2d Cir. 2008) ........................................................................ 10

*Brock v. Superior Care Inc.*,
    840 F.2d 1054 (2d Cir.1988) .................................................................. 10, 11

*Carter v. Dutchess Cmty. Coll.*,
    735 F.2d 8 (2d Cir. 1984) ............................................................................ 11

*Democratic Union Organizing Committee v. NLRB*,
    603 F.2d 862 (D.C. Cir. 1978)..................................................................... 12

*Eisenberg v. Advance Relocation & Storage, Inc.*,
    237 F.3d 111 (2d Cir. 2000) ........................................................................ 11

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013)
    *cert. denied*, 134 S. Ct. 1516, 188 L. Ed. 2d 450 (2014)............................ 10

*NLRB v. Associated Diamond Cabs, Inc.*,
    702 F.2d 912 (11th Cir. 1983) .................................................................... 12

*Norwest Fin., Inc. v. Fernandez*,
    225 F.3d 646 (2d Cir. 2000) ........................................................................ 11

*Saleem v. Corp. Transp. Grp., Ltd.*,
    52 F.Supp.3d 526 (S.D.N.Y. 2014) ............................................................. 12

*United States v. Moskowitz*,
    215 F.3d 265 (2d Cir. 2000) ........................................................................ 11

*United States v. Silk*,
    331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947)................................... 10

*Zheng v. Liberty Apparel Co.,*
    355 F.3d 61 (2d Cir. 2003) ........................................................ 10

## STATUTES

FLSA, 29 U.S.C. § 201 ................................................................. 1

N.Y. Gen. Bus. Law § 681(3) .................................................... 7

RCNY, Tit. 35, §§ 59A-03(c), -20(a)-(b) ............................... 7

RCNY, Title 35, § 59A-(c)(1)-(2) ............................................ 1

TLC Rule 59A-03(c) .................................................................. 5

TLC Rule 59A-03(k) .................................................................. 6

TLC Rule 59A-03(m) ................................................................. 6

## STATEMENT OF THE ISSUE

The issue to be decided on this appeal is whether the District Court correctly determined that Plaintiffs-Appellants ("Plaintiffs") and other individuals who operate "black cars" -- either as franchisees or as lessees of franchisees – cannot be classified as "employees" who are entitled to overtime pay and other benefits under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[1]

## STATEMENT OF THE INTEREST AND AUTHORITY TO FILE[2]

This appeal represents a fundamental challenge to the way in which the for-hire "black car" industry in New York City has traditionally been organized. Black cars are owned by individuals (or entities) who are either "franchisees" of a "black car base" or members of cooperative that operate black car bases. Rules of the City of New York ("RCNY"), Title 35, § 59A-(c)(1)-(2). Franchisees are investors who have purchased "franchises" with "black car bases" so that they can earn revenue either by providing transportation directly to "black car base" clients or leasing their franchise rights to third parties. These franchise relationships with black car bases have value because, among other things, they afford the investors (or their lessees) the opportunity to earn more money by driving more hours while, at the same time, allowing for freedom and flexibility in relation to their driving

---

[1] Appellants' brief does not raise any claims under the New York State Labor Law.

[2] This brief was not authored, in whole or part, by counsel for any of the parties, nor did any party, party's counsel or person other than amici contribute money that was intended to fund the brief's preparation or submission.

schedules.  Additionally, the franchises are themselves investments that can be bought, sold or leased in an existing market.

Each of the Amici[3] is a franchisee who invested in and owns one or more franchises to operate black cars in New York City and either operates his vehicles himself and/or leases them out to other drivers to operate.  Amici acquired their franchises by purchasing them from Defendants-Appellees ("Defendants"). Notably, in the current market, black car franchises are being sold and purchased for between $20,000 and $60,000.  In addition to their investments in their black car franchises, Amici and other similarly situated operators own their own vehicles and pay for their insurance and vehicle maintenance from their own funds.  Not only have the Amici made substantial investments to run their franchise business through the acquisition of a vehicle and franchise, but in some cases, the Amici have purchased multiple franchises and vehicles to enhance their business operations.

Although the Amici franchisees are not parties to this action, the future viability of their investment in black car franchises would inevitably be affected by

---

[3]    The Amici include Mark Malchikov, Pavel Borisov, Anton Siroruka, Alex Borden, Valeriy Vishin, Michael Baier and Josef Nusenvaum. Amici own or control through other entities one or more franchises to operate Black Cars. Amici collectively hold numerous franchises to operate black cars. Some of the Amici were also putative plaintiffs before the District Court.  As independent contractors and business owners, they chose not to become parties to the suit.

the outcome of this appeal.  At present, franchisees and the drivers who lease from them work hours of their own choosing (subject, of course, to the regulations of the New York City Taxi and Limousine Commission ["TLC"]).  They are at liberty to "log in" if and when they choose to accept fares from the dispatchers for however many hours they see fit.  The more hours the franchisee and/or the lessee works and the more fares he or she is able to accept, the more he or she is able to earn.  Thus, there is a direct correlation between the value of the franchise and the freedom that franchisee- and lessee-drivers have to choose their own working hours.

If this Court affirms the District Court's decision, the status quo in the industry will be sustained.  On the other hand, if Plaintiffs succeed in their efforts to be treated as "employees," the manner in which the black car industry has operated since its inception will be disrupted and all of the economic assumptions on which Amici made their investments will be turned on their heads.  As just one example, if Plaintiffs are deemed "employees," they will be entitled to overtime pay.  As a result, black car bases will inevitably redesign their dispatch systems to minimize drivers' opportunity to work more than 40 hours a week.  Such a change in policy will curtail the freedom that franchisees now enjoy (as de facto business owners) and severely limit their earning opportunities.  The value of Amici's investments in their franchises will unavoidably be harmed.  Indeed, should the

Court find that the Amici are employees of Defendants-Appellees, they would lose tens of thousands of dollars and their franchise agreements with Defendants-Appellees would be effectively nullified. In sum, it would essentially amount to a taking of their property.

Amici's authority to submit this brief is based on the permission that was granted by this Court.[4]

## STATEMENT OF THE CASE

### A.    <u>Introduction</u>

The regulated private-car transportation system in New York City has several diverse components, including medallion yellow taxicabs, green taxis that service the outer boroughs, livery services, limousine companies and, finally, black cars like those involved here. Each segment of the industry has its own history, characteristics and economic model.

Like Amici, Plaintiffs are black car operators who have affiliated with black car bases (Defendants) that provide dispatching, sales, billing and other services. Operators ordinarily obtain access to the services provided by black car bases by purchasing "franchises" either from those bases themselves or from existing

---

[4]    As of this writing, Amici's motion for permission to appear as *amicus curiae* is pending. It should be noted that Plaintiffs-Appellants do not oppose the motion.

franchisees.[5]  As the District Court noted, there is a functioning and active market for black car franchises, which currently sell for between $20,000 and $60,000. Franchisees either operate their own vehicles or lease their franchise privileges (with or without their vehicles) to others.  Even where the franchise has been leased to another duly licensed driver, the franchise owner maintains its contractual relationship with the base station and, depending on the arrangement with the lessee, often pays for the insurance and upkeep of the vehicle.  Franchisee-operators (or their lessee-operators) determine for themselves how many hours they will drive, which hours they will work and which dispatches they will accept. In other words, they operate as business owners, not employees of someone else's business.

Indeed, even the TLC has defined the black car industry in a manner consistent with that of an independent business owner/independent contractor.[6]  In other words, the TLC recognized the fact that black car drivers were independent business owners and specifically required them to either purchase a franchise or

---

[5]    Alternatively, some operators may "affiliate" with cooperative black car bases by becoming "members."  Such arrangements are not at issue in this appeal.

[6]    TLC Rule 59A-03(c) defines a Black Car Base as a For-Hire Base that operates as follows:
    (1)    All Black Car Vehicles are dispatched on a pre-arranged basis
    (2)    All Black Car Vehicles are owned by franchisees of the Base or are members of a cooperative that operates the Base; and
    (3)    More than ninety percent (90%) of the Base's business is on a payment basis other than direct cash payment by a Passenger.

purchase shares in a cooperative in order to be dispatched by any black car base. In contrast, the TLC did not impose a similar restriction on the nature of the economic relationship between driver and base with regard to livery drivers or limousine drivers. *See* TLC Rule 59A-03(k) and 59A-03(m).

In addition, unlike the black car industry, livery and limousine companies are often organized around an employer-employee model. As a result, individuals who prefer to work on a set schedule, receive a fixed salary and be subject to the direction and control that comes with an employer-employee relationship, can choose to work for livery and limousine services outside of the black car industry.

## B.    History of the Black Car Industry

The black car industry grew directly out of the two-way radio system that was previously used by medallion taxicabs in New York City until the early 1980's. Preferring two-way radios because they provided a regular flow of business and a greater feeling of safety, some individual taxicab owners with medallions affiliated with each other in co-operatives in order to afford passengers improved access to taxicab service.

In 1982, the TLC took steps to increase the number of medallion taxis available for street hails. To accomplish that goal, the TLC authorized 3,200 independent medallion owners affiliated with two-way radio groups to transfer their radios to non-medallion vehicles. The result was an increase in the number of

medallions available for use by street-hail taxis and a burgeoning industry consisting of non-medallion vehicles available to take radio calls. The TLC continued its policy in 1985 by mandating that all two-way radios be removed from medallion taxis. By 1987, the transformation of the medallion two-way radio system was complete. At that point, all medallion taxis were available for street hails, while drivers who preferred the independence and control that they had enjoyed under the two-way radio dispatch systems affiliated with black car bases that were modeled on the pre-existing two-way radio groups.

The emergent black car system reflected its origins as well as the preferences of the self-selected group of drivers who chose to remain in the black car industry. Under the TLC rules, all black car vehicles must operate through pre-arrangement with a base and be "owned by Franchisees of the Base or . . . members of a cooperative that operates the Base." RCNY, Tit. 35, §§ 59A-03(c), -20(a)-(b). Like most other franchise arrangements, black car franchisees enter into contracts that authorize them to provide services to the franchisor base's customers in exchange for a purchase price and/or a franchise fee. *See* N.Y. Gen. Bus. Law § 681(3). In addition to the cost of acquiring and maintaining the franchise, franchisees' investments include the cost of acquiring, maintaining and insuring their vehicles. Franchisees earn returns on their investments by either

operating their vehicles and accepting "radio"[7] dispatches from their affiliated black car bases, leasing their franchises and vehicles to other independent drivers or selling their black car franchise on the open market to either black car bases or other individuals.

## ARGUMENT

### FRANCHISEES WHO AFFILIATE WITH BLACK CAR BASES ARE INDEPENDENT CONTRACTORS, NOT EMPLOYEES

Amici contend that the District Court was correct in its conclusion that, as a matter of law, black car drivers are independent contractors, not employees, under the "economic reality" test of the FLSA. Defendants have little or no control over the individuals who drive as franchisees or franchisees' lessees. Those individuals (a) decide for themselves how much, or how little to work, (b) spend their own money to purchase or lease the necessary equipment (*i.e.*, their vehicles and dispatch "radios"), and (c) expend their own funds to maintain, repair, and insure their vehicles. Moreover, they self-identify as independent contractors and operate their franchises more like entrepreneurial small business owners than employees.

Contrary to the suggestion of the *Amicus Curiae* Brief submitted by the National Employment Law Project ("NELP"), et al., there is no support for the

---

[7]   Modern dispatch "radios" are actually smartphones preloaded with software provided by Appellees (R. p. 11).

suggestion that treating black car franchisees as independent contractors is part of a recent and growing "scheme" to "misclassify" employees, thereby depriving them of the protection of workplace laws and such salutary benefits as unemployment compensation and unemployment insurance. While such a trend may (or may not) exist in other industries, NELP's generalized concerns about the growth of the category of "independent contractors" and the effect of misclassification on "today's economy" are misplaced in this context.

As the history of the black car industry in New York City demonstrates, the classification of black car franchisees as "independent contractors" is not a recent reclassification, nor is it merely part of a contemporary trend to give companies an economic advantage by converting working individuals who were previously considered employees to "independent contractors." Rather, it is rooted in the longstanding traditions of the industry and is consistent with the way in which the drivers who invest in their affiliations with black car bases have always been classified. Indeed, notwithstanding the wishes of the small group of drivers who comprise the Plaintiffs in this action, most drivers who have chosen to invest in franchises and black-car vehicles prefer their roles as entrepreneurs with the freedom to choose their own hours, to determine their own earnings and even to buy and sell their franchises when it is in their economic interests to do so. As noted, those drivers who, like Plaintiffs, do not wish to accept the economic risks

associated with such independence and instead prefer the security and predictability of wage-based employment are free to seek employment with the livery and limousine services that utilize the employment model – and the attendant supervision and direction that goes with it.

Both the franchisees' role as middlemen for the lessee-drivers and the latitude they enjoy when they use their franchises to drive themselves strongly support the District Court's conclusion that Plaintiffs are independent contractors and not employees under the FLSA.  Under that test, the courts look to the "economic reality" of the situation to distinguish employees from independent contractors.  *See Brock v. Superior Care Inc.*, 840 F.2d 1054, 1058-61 (2d Cir.1988) (citing *United States v. Silk*, 331 U.S. 704 (1947)).  To analyze whether an individual is an employee or independent contractor, this Court has considered a variety of factors.  As the Court recently observed, those factors "state no rigid rule for the identification of an FLSA employer" but rather they provide "a nonexclusive and overlapping set of factors" to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 1516, 188 L. Ed. 2d 450 (2014) (quoting *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 72 (2d Cir. 2003)); *see Barfield v. New York City Health & Hospitals Corp.,* 537 F.3d 132, 143 (2d Cir.

2008); *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984); *Brock v. Superior Care, Inc.,* 840 F.2d at 1058–1059. Notably, notwithstanding NELP's extensive discussion of the rule in the 6th and 7th Circuits (*see* Brief *Amicus Curiae* by The National Employment Law Project et al., pp. 17-22), in *this* Circuit, the existence and degree of each factor considered may be a question of fact, but the legal conclusion to be drawn is a question of law. *Eisenberg v. Advance Relocation & Storage, Inc.,* 237 F.3d 111, 115 (2d Cir. 2000); *Norwest Fin., Inc. v. Fernandez*, 225 F.3d 646 (2d Cir. 2000); *United States v. Moskowitz,* 215 F.3d 265, 272 (2d Cir. 2000); *Brock*, 840 F.2d at 1059.

Neither NELP nor the Department of Labor, which has also submitted an *amicus curiae* brief, has identified a valid basis to disturb the well reasoned decision of the District Court in this case. The Department of Labor arrives at its conclusion that a finding of an employer-employee relationship would be "reasonable" primarily by discounting the importance of the black car drivers' freedom to choose how much or how little they work. The Department of Labor also illogically treats regulatory restrictions imposed on the industry by the TLC as if they were indicia of control exercised by Defendants. As aptly noted by the District Court, it is irrelevant that the TLC regulates the drivers, "both because the overall FLSA inquiry focuses on the 'economic reality' of the relationship and because the control factor focuses on the control exercised by *Defendants." Saleem*

*v. Corp. Transp. Grp., Ltd.*, 52 F.Supp.3d 526, 538 (S.D.N.Y. 2014)(emphasis in original). Indeed, circuit courts have consistently held that requirements that are imposed to ensure compliance with governmental regulations do not evidence an employer-employee relationship. *NLRB v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 922 (11th Cir. 1983)("regulation imposed by governmental authorities does not evidence control by the employer."); *Air Transit, Inc. v. NLRB*, 679 F.2d 1095, 1099 (4th Cir. 1982)("government regulations constitute supervision not by the employer but by the state"); *Democratic Union Organizing Committee v. NLRB*, 603 F.2d 862, 875 (D.C. Cir. 1978)(same).

Most critically, the Department of Labor's *amicus* submission disregards the significance of both the initiative and the capital commitment required to purchase and manage a black car franchise.[8]

Finally, many of the elements of so-called "control" that the Department of Labor's brief cites, such as the base operator's control over the price per ride and its rules regarding cleanliness of the vehicle, the efficiency of the driver's routes and the driver's manner of dress, are no different from the kinds of limitations and requirements that are imposed on franchise owners of such concerns as Dunkin' Donuts and McDonald's. The fact that these franchisors establish prices and

---

[8] The Department of Labor's *amicus* brief virtually ignores the significant commitment of capital involved in acquiring a franchise and vehicle and instead focuses on the more routine expenses involved in maintaining the vehicle and keeping it adequately fueled.

standards for the business owner-franchisees that use their name does not convert the status of the franchisees from owner-entrepreneur to employee. The same is true of the individual entrepreneurs who purchase and operate black car franchises from Defendants.

**CONCLUSION**

For all of the reasons set forth above as well as the reasons set forth in the briefs submitted by Defendants-Appellees and Black Car Assistance Corporation, as proposed *amicus curiae*, Amici respectfully submit that this Court should affirm the decision of the District Court.

Dated:   New York, New York
         July 28, 2015

                         **MINTZ & GOLD LLP**


                           /s/ Steven G. Mintz
                         Steven G. Mintz
                         Jeffrey D. Pollack
                         600 Third Avenue, 25th Floor
                         New York, NY 10016
                         (212) 696-4848
                         mintz@mintzandgold.com
                         pollack@mintzandgold.com
                         *Attorneys for Amici*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 29(d) and 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that this brief contains 3,046 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), as established by the word count of the computer program used for the preparation of the brief.

This brief also complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rules of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 14-point size Times New Roman font.

Dated:   New York, New York
         July 28, 2015

   /s/ Steven G. Mintz
Steven G. Mintz
Jeffrey D. Pollack
600 Third Avenue, 25th Floor
New York, NY 10016
(212) 696-4848
mintz@mintzandgold.com
pollack@mintzandgold.com
*Attorneys for Amici*